IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LISA HENRY, | ) | CASE NO. 1:11-CV-00301 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| GININE TRIM, WARDEN | ) | |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

Petitioner, Lisa Henry ("Henry" or "Petitioner"), filed this habeas corpus action pursuant to 28 U.S.C. § 2254 on February 11, 2011.  Doc. 1.  Henry challenges the constitutionality of her conviction and sentence in *State of Ohio v. Lisa J. Henry*, Case No. 06CR000656 (Lake County), and asserts six grounds for relief.[1]  Henry was indicted and convicted on one count of aggravated arson, one count of aggravated murder, one count of murder and three counts of endangering children.  Exhibit 2, Exhibit 3, Exhibit 4.  She was sentenced to a total term of twenty-three years to life in prison.  Exhibit 8.

This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2.[2]  For the reasons set forth below, the undersigned recommends that Henry's petition for writ of habeas corpus (Doc. 1) be **DENIED**.

---

[1] Henry's grounds for relief (Grounds One through Ground Six) are set forth below in Section II(D), pp. 13-14.

[2] The case was initially referred to United States Magistrate Judge Nancy Vecchiarelli but was reassigned to the undersigned Magistrate Judge pursuant to General Order 2011-18.

## I.  Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009). The Eleventh District Court of Appeals summarized the facts underlying Henry's conviction as follows: [3]

> **[*P2]** On October 25, 2006, appellant was indicted by the Lake County Grand Jury on six counts: count one, aggravated arson, a felony of the first degree, in violation of R.C. 2909.02(A)(1); count two, aggravated murder, in violation of R.C. 2903.01(A); count three, murder, in violation of R.C. 2903.02(B); and counts four, five, and six, endangering children, misdemeanors of the first degree, in violation of R.C. 2919.22(A). On October 27, 2006, appellant **[**2]** filed a waiver of her right to be present at the arraignment and the trial court entered a not guilty plea on her behalf.
>
> **[*P3]** On November 15, 2006, appellant filed a waiver of her right to a speedy trial, withdrew her former not guilty plea, and entered a plea of not guilty by reason of insanity to all charges in the indictment. In its November 27, 2006 judgment entry, the trial court appointed the Adult Probation Department to carefully examine appellant pursuant to R.C. 2945.39 and 2945.371 on the issues of competency and sanity.
>
> **[*P4]** On February 1, 2007, appellee, the state of Ohio, filed a motion for a psychological evaluation pursuant to R.C. 2945.371, which was granted by the trial court on the following day. On February 7, 2007, appellant filed a brief in opposition to the state's motion for a psychological evaluation and a motion to strike the trial court's February 2, 2007 judgment entry. The state filed a response on February 13, 2007. Pursuant to its February 20, 2007 judgment entry, the trial court denied appellant's motion to strike its February 2, 2007 judgment entry.
>
> **[*P5]** A competency hearing was held on April 4, 2007. Pursuant to its April 13, 2007 judgment entry, the trial court **[**3]** found appellant competent to stand trial.

---

[3] The facts are taken from the decision in Henry's first appeal to the Ohio Eleventh District Court of Appeals. Exhibit 1; *State of Ohio v. Henry*, 2009 Ohio App. LEXIS 976 (11th Dist. 2009).

[*P6]  On July 13, 2007, appellant withdrew her plea of not guilty by reason of insanity to counts two through six, and entered a plea of not guilty as to those counts. Appellant's plea with respect to count one, however, remained as not guilty by reason of insanity.

[*P7]  A jury trial commenced on July 16, 2007.

[*P8]  At the trial, the facts revealed that eleven people lived in the Henry residence on Parmly Road in Perry Township, Lake County, Ohio. Appellant and her husband, John Henry ("John"), were the heads of the household. Their three children, John Jr., Crystal, and Michael all resided with them. John Jr. was married and he and his wife, Jennifer, lived at the home with their four children. Also, Crystal, who was in the process of separating from her husband, Joseph Schuldheis ("Joe"), had a child who lived at the residence.

[*P9]  Appellant's and John's child, Michael, who was twenty-six years old at the time of the incident at issue, had cerebral palsy and was mainly confined to his bedroom where he slept on the floor on an air mattress. Michael had the ability to crawl and make noises but could not walk, sit up or talk on his own.

[*P10]  Out of all of the adults [**4] in the Henry household, appellant was the only one that did not have a job. She was responsible for getting the older children off to school as well as caring for her three young granddaughters and Michael. Appellant was a good homemaker and took care of the other family members as well.

[*P11]  Joe testified for the state that because of the marital problems he and Crystal had, she moved back into her parents' home. Joe and Crystal argued frequently. The night before the incident, Joe called the Henry residence repeatedly and made threats to Crystal. According to Joe, he told Crystal that a complaint should be made to Human Services regarding the poor manner in which Michael was being treated.

[*P12]  On the morning of September 13, 2006, the working adults left for their jobs and appellant got the older kids off to catch the school bus. John, while at work at Mentor Lumber, received a phone call from appellant to hurry home before it was too late. John testified for appellant that he raced back to find his house ablaze. He tried to enter Michael's bedroom, which was in the center of the home, but the heat and smoke were too intense. The bathroom door was locked, so John kicked it in to find appellant [**5] apparently lifeless in the bathtub. John called 9-1-1. He carried appellant out and was also able to retrieve the three young granddaughters from the house to safety.

[*P13]  At approximately 9:30 a.m., the Lake County Sheriff's Department ("LCSD") and the Perry Fire Department ("PFD") were dispatched to the

residence. Firefighters attempted firefighting and rescue efforts and paramedics assisted appellant, who had cuts on the tops of both her hands which were bleeding. Patrick Fuerst, a lieutenant with the PFD, testified for the state that appellant said she wanted to die and wanted her and Michael to be with her deceased mother.

[*P14]  Appellant was taken to the hospital where she was treated for wounds to the top of her hands and suffered a severed tendon. She was released shortly after treatment, and taken to the LCSD where she was interviewed. Scott Stranahan ("Detective Stranahan"), a detective with the LCSD, testified for the state that appellant told him and other deputies that she wanted to be in heaven with her mother.

[*P15]  Efforts to rescue Michael were unsuccessful. Michael's corpse was ultimately found three to four feet from the bedroom door under debris. Stranahan and Chuck Hanni ("Hanni"), [**6] an arson investigator with the Ohio State Fire Marshall's Office, testified for the state that Michael appeared to have been lying on a blanket, there was a comforter by his side, and newspapers were piled along the side of his body. Also, a gas can was in Michael's vicinity and an odor of accelerant was detected.

[*P16]  Michael Reed, a lieutenant with the LCSD, testified for the state that an initial walk through of the residence after the fire had been suppressed revealed an apparent suicide note written by appellant. At that time, the LCSD contacted the Lake County Prosecutor's Office to obtain a search warrant.

[*P17]  According to Hanni, during the initial walk through, he observed a line of demarcation which indicated how far the soot and gases had banked down before the fire was extinguished. Hanni indicated that a gas can was found near Michael's body, along with the remains of a comforter, portions of a blanket which were partially underneath him, and some newspapers stacked along his left side. Hanni was able to detect an odor of accelerant on the newspapers found alongside Michael's body. From his observations, Hanni determined that the fire originated in Michael's bedroom on the floor [**7] level near the lower half of his body, which was evidenced from the bloom pattern on the ceiling. Hanni testified that when Michael's body was placed in a body bag, he noticed a foam cone in his mouth.

[*P18]  Upon obtaining a search warrant, the LCSD recovered a gas can, an apparent suicide note, a blanket, comforter, newspapers which surrounded Michael's body, a playpen and swing, blood evidence, a sharp blade found near the bathtub, and appellant's clothing. Accelerants were later found on the newspapers, blankets, and gas can.

[*P19]  On the day following the incident, Dr. William Bligh-Glover ("Dr. Bligh-Glover"), Lake County Forensic Pathologist, testified for the state that he

4

performed an autopsy on Michael's body. According to Dr. Bligh-Glover, Michael's remains were completely covered with soot and there were extensive third and fourth degree burns over seventy percent of his body. Michael's lower legs were completely destroyed by the fire. Internal examination of his upper airways revealed a grayish color including the area in his trachea which would normally be pink. He found no sign of disease or illness. Dr. Bligh-Glover opined that Michael died of asphyxiation due to his involvement [**8] in a flash fire, and that his windpipe was damaged by superheated gases below the vocal chords indicating that he inhaled those gases. The official cause of death was determined to be homicidal violence. Dr. Bligh-Glover stressed that there was simply nothing to indicate that Michael died from natural causes. He stated that many things can cause a foam cone, but ultimately it is caused from damage to the airways when fluid that keeps the cells wet leaks out and air passes over the fluid so that it whips into a froth. Dr. Bligh-Glover said that a person must be living to form a foam cone. Presence of the foam cone was additional evidence leading him to believe that Michael was alive at the time of the fire.

 [*P20]  On cross-examination, Dr. Bligh-Glover agreed that elevated carbon monoxide levels and soot in the airway are the time-honored scientific findings used to determine if someone was alive during a fire, but while acknowledging that that is most often the case, stated that it is not always the case. He indicated the difference was that Michael died in a flash fire.

 [*P21]  Dr. Heather Nielson Raaf ("Dr. Raaf"), retired Chief Deputy Coroner with the Cuyahoga County Coroner's Office, testified  [**9] for the state that she reviewed Dr. Bligh-Glover's autopsy findings as well as all of the photographs and investigations. She agreed that as a result of those findings, Michael did not die of natural causes. Dr. Raaf found the foam cone significant and concurred with Dr. Bligh-Glover that it occurs in a living person who is sometimes in a fire. She explained that a foam cone occurs when someone is actively dying. Dr. Raaf opined that Michael died very quickly due to lack of oxygen. She stated there was no evidence that Michael died of a seizure or pneumonia.

 [*P22]  Dr. Charles Yowler, Director of the Burn Unit at MetroHealth Medical Center in Cleveland, Ohio, testified for appellant that it was his opinion that the finding of normal carbon monoxide levels and lack of soot below the vocal chords was not consistent with Michael being alive at the time of the fire.

 [*P23]  Dr. James Dibdin ("Dr. Dibdin"), who is licensed in California and certified in anatomic and forensic pathology, testified for appellant that it was his opinion that Michael died of a seizure and a fatty liver. Dr. Dibdin believed that Michael was not alive at the time of the fire due to the normal carbon monoxide levels and lack [**10] of soot in his airways.

 [*P24]  According to appellant, at first, she had little recollection on the morning of the incident. However, some of her memories had come back. For instance,

appellant recalled going into Michael's bedroom, finding his body cold, and later waking up in the hospital. She had no recollection of writing a suicide note or starting the fire.

 [*P25]  Dr. Phillip Resnick ("Dr. Resnick"), who is board certified in forensic psychiatry, testified for appellant that he interviewed her and several of her family members days and months following the incident. A few days after the incident, Dr. Resnick stated that appellant did not remember much regarding that morning, and he found her amnesia to be genuine. Months later, he indicated that appellant regained part of her memory and remembered finding Michael dead that morning, but did not remember writing a suicide note or starting the fire. Dr. Resnick opined that appellant was suffering from a severe mental disease at the time of the incident which was a major depressive episode with dissociative features.

 [*P26]  Dr. Jeff Rindsberg ("Dr. Rindsberg"), a state rebuttal witness with the Lake County Probation Department, testified that he believed [**11] appellant suffered from major depressive disorder. However, he opined that it was not a severe mental disease and it did not bear on her ability to know right from wrong. Dr. Rindsberg stated that appellant had no traits or features associated with dissociative conditions.

 [*P27]  Finally, Dr. James Eisenberg ("Dr. Eisenberg"), a state rebuttal witness engaged in the field of forensic psychology, testified that he believed appellant was depressed and suffered from dissociative features, but that she knew the wrongfulness of her actions. Dr. Eisenberg stated that no one could have an opinion as to appellant's mental state at the time because of her amnesia.

 [*P28]  On July 25, 2007, following the trial, the jury returned a verdict finding appellant guilty on all charges in the indictment. The trial court deferred sentencing until a later date and referred the matter to the Adult Probation Department for a presentence investigation and report as well as an updated psychological evaluation.

***

Exhibit 1, ¶¶ 2-28.[4]

---

[4] In her Return of Writ, Respondent sets forth the facts from the Eleventh District Court of Appeals' Judgment Entry. Doc.4, pp. 2-6.  Henry agrees that Respondent's recitation of the case's factual background accurately quotes the facts determined by the court of appeals.  Doc. 9, p. 2.  However, Henry suggests that the court of appeals' factual determination that Dr. William Bligh-Glover "'found no signs of illness' or indications that Mikey [Henry's son] died from natural causes" was incorrect because "Dr. Bligh-Glover included in his autopsy report the fact that Mikey suffered from liver disease."  Doc. 9, p. 3.  To support her argument, Petitioner relies on testimony from other experts regarding their interpretation of Dr. Bligh-Glover's findings.  Doc. 9, p 3 (citing Exhibit 49, Tr. 813-816; Exhibit 50, Tr. 1001-1035).  Petitioner also argues that, because Dr. Bligh-Glover testified that he was unaware that Michael suffered from severe spastic cerebral palsy, the court of appeals' factual determinations regarding the trial testimony of Dr. Bligh-Glover was incorrect.  Doc. 9, p. 3 (citing Exhibit 47, Tr. 342).  However, the court of appeals' factual determination regarding Dr. Bligh-Glover's trial testimony is supported by the trial transcript and Henry has not proven by clear and convincing evidence that the state court's factual findings were incorrect.

## II. Procedural Background

### A.  State Conviction

On October 25, 2006, the Lake County Grand Jury indicted Henry on six counts.  Exhibit 2.  In count one, Henry was charged with aggravated arson in violation of Ohio Rev. Code § 2909.02(A)(1).  Exhibit 2.  In count two, Henry was charged with aggravated murder in violation of Ohio Rev. Code § 2903.01(A).  Exhibit 2.  In count three, Henry was charged with murder in violation of Ohio Rev. Code § 2903.02(B).[5]  Exhibit 2.  In counts four, five and six, Henry was charged with endangering children in violation of Ohio Rev. Code § 2919.22(A).  Exhibit 2.

On July 25, 2007, a jury found Henry guilty of all six counts in the indictment.  Exhibit 4.  On August 20, 2007, the trial court denied Henry's motion for a new trial.  Exhibit 5, Exhibit 6, Exhibit 7.  Thereafter, on August 22, 2007, the trial court sentenced Henry to three (3) years in prison on count one; life imprisonment with parole eligibility after serving twenty (20) years on count two; count three merged with count two for purposes of sentencing; six (6) months in prison on count four; six (6) months in prison on count five; and six (6) months in prison on count six.  Exhibit 8.  The trial court indicated that count one is to run consecutive to count two and counts four, five and six are to run concurrent with each other and with count two for a total of twenty-three (23) years to life in prison.[6]  Exhibit 8.

---

Accordingly, the state court's factual findings are presumed correct.  *See* 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d at 397.  Additionally, Petitioner suggests that the court of appeals' factual findings are not correct because certain experts either were not sufficiently qualified or certain expert testimony was unreliable.  Doc. 9, p. 3.  These challenges are intertwined with Petitioner's various grounds for relief and will be addressed in later portions of this Report and Recommendation, as appropriate.

[5] On May 9, 2007, count three was amended.  Exhibit 3.

[6] Henry was given credit for three hundred forty-four (344) days already served.  Exhibit 8. The trial court informed Henry that post release control is mandatory for five (5) years.  Exhibit 8.

**B.  Direct Appeal**

On September 4, 2007, Henry, through trial counsel, filed an appeal to the Eleventh

District Court of Appeals ("Henry I" – Case No. 2007-L-142).  Exhibit 9.  In her May 28, 2008,

appellant's brief, Henry, through new counsel, asserted the following six assignments of error:

> **FIRST ASSIGNMENT OF ERROR**:  The appellant was denied her Sixth
> Amendment right to the effective assistance of counsel when defense counsel
> failed to perform as a reasonably competent advocate before and during trial.
>
> **SECOND ASSIGNMENT OF ERROR**: The appellant was denied her
> constitutional right to a fair trial under the Sixth and Fourteenth Amendments
> because of prosecutorial misconduct at trial and during closing argument.
>
> **THIRD ASSIGNMENT OF ERROR**: The appellant was denied her rights to
> due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments
> when the court committed clear error in his rulings, causing significant unfair
> prejudice to the appellant.
>
> **FOURTH ASSIGNMENT OF ERROR**: The jury's decision finding the
> appellant guilty of either homicide charge was not supported by sufficient
> evidence.
>
> **FIFTH ASSIGNMENT OF ERROR**: The jury's decision finding appellant
> guilty of the charges was against the manifest weight of the evidence.
>
> **SIXTH ASSIGNMENT OF ERROR**: The trial court erred and violated
> appellant's Fifth Amendment right to be free from double jeopardy when it
> ordered consecutive service for allied-offenses.

Exhibit 10.  On September 17, 2008, the State filed a responsive brief.  Exhibit 11.   On

September 30, 2008, Henry filed a reply brief.  Exhibit 12.  On March 16, 2009, the Eleventh

District Court of Appeals affirmed the judgment of the Lake County Court of Common Pleas –

Case No. 2007-L-142.  Exhibit 1 (LEXIS version), Exhibit 13.

On March 26, 2009, Henry filed an application for reconsideration.[7]  Exhibit 14.  On

April 6, 2009, the State of Ohio filed its response to Henry's application for reconsideration.

Exhibit 15.  On April 22, 2009, the Eleventh District Court of Appeals denied Henry's

application for reconsideration.  Exhibit 16.

On  April 30, 2009, Henry through counsel, filed a Notice of Appeal with the Ohio

Supreme Court (Exhibit 17) and a Memorandum in Support of Jurisdiction (Exhibit 18).  Henry

raised the following propositions of law:

> **FIRST PROPOSITION OF LAW**:  The prejudice prong in a *Strickland* analysis
> is not outcome determinative, but focuses on the fairness and reliability of the
> verdict.  If there is a reasonable probability that without counsel's deficient
> performance, a single juror would have come to a different conclusion, or had a
> reasonable doubt about the defendant's guilt, prejudice has occurred.

> **SECOND PROPOSITION OF LAW**: It violates the Fifth, Sixth and Fourteenth
> Amendments and constitutes reversible misconduct for the prosecutor to
> introduce theories and testimony on cause of death that were not supported by
> reliable, scientific evidence.  When a prosecutor commits such misconduct, offers
> facts not in evidence to support its theory of the case, and attacks a defense
> witness in bad faith, the fairness of the trial has been sufficiently compromised to
> require reversal.

> **THIRD PROPOSITION OF LAW**: A trial court violates a defendant's rights to
> due process and a fair trial, committing cumulative reversible, prejudicial error
> when it prevents defense counsel from using learned treatises as substantive
> evidence; allows expert witnesses to present testimony that it not reliable and
> scientifically valid; prevents defense counsel from inquiring of state's witnesses
> about topics discussed at the autopsy; admits numerous inadmissible hearsay
> statements and orders the production of a videotaped psychiatric examination
> before testimonial waiver.

> **FOURTH PROPOSITION OF LAW**: There is insufficient evidence to support
> a homicide conviction based on death by arson when the physical evidence
> established that it was impossible for the deceased to have been alive when the
> fire started.

> **FIFTH PROPOSITION OF LAW**: Because the autopsy findings unequivocally
> established that Mikey died before the fire was set, the jury clearly lost its way

---

[7] Henry's application for reconsideration related to the court of appeals' ruling on her ineffective assistance of trial
counsel claims.  Exhibit 14.

and created such a manifest miscarriage of justice that Mrs. Henry's convictions must be reversed and a new trial ordered.

**SIXTH PROPOSITION OF LAW**: When an offender is convicted of homicide by arson, the homicide and arson constituted allied offenses and a single criminal transaction and cumulative punishments are prohibited.

Exhibit 18.  The State of Ohio filed a memorandum in response.  Exhibit 19.  On July 29, 2009, the Ohio Supreme Court denied leave to appeal and dismissed Henry's appeal as not involving any substantial constitutional question.  Exhibit 20, Case No. 2009-0799.

On October 27, 2009, Henry, through counsel, filed a petition for certiorari in the United States Supreme Court.  Exhibit 21, Exhibit 22.  On February 22, 2010, The Supreme Court denied Henry's petition for certiorari.  Exhibit 22, Exhibit 23.

### C. Petition for Post-Conviction Relief

While Henry's direct appeal was pending, on June 13, 2008, Henry filed, in the trial court, a Post-Conviction Petition to Vacate or Set Aside Judgment and Sentence (Exhibit 24) and a Motion to Stay (Exhibit 25).  On June 18, 2008, Henry filed a First Supplement to Post-Conviction Petition to include additional affidavits in support of her post-conviction petition. Exhibit 26.  In her Post-Conviction Petition, Henry asserted the following grounds for relief:

**GROUND FOR RELIEF I**: The Petitioner was denied her right to effective assistance of counsel under the Sixth and Fourteenth Amendments of the U.S. Constitution.

**GROUND FOR RELIEF II**: The Petitioner was denied her right to remain silent and not to incriminate herself as guaranteed by the Fifth and Fourteenth Amendments of the U.S. Constitution.

**GROUND FOR RELIEF III**: The Petitioner was denied her right to be free from warrantless searches and seizures as guaranteed by the Fourth and Fourteenth Amendments of the U.S. Constitution.

**GROUND FOR RELIEF IV**: The Petitioner was denied her right to confront the witnesses against her in violation of the Sixth and Fourteenth Amendments of the U.S. Constitution.

**GROUND FOR RELIEF V**: The Petitioner was denied her right to a fair trial and due process free from prosecutorial misconduct as guaranteed by the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution.

Exhibit 24.  On August 7, 2008, the State of Ohio filed its Answer to Henry's Petition for Post-Conviction Relief and Motion to Dismiss (Exhibit 27) and its Opposition to Henry's Motion for Stay of Proceedings in Post-Conviction (Exhibit 28).  On August 20, 2008, Henry filed a reply in response to the State's opposition to her Motion to Stay (Exhibit 29) and, on September 15, 2008, Henry filed a reply in response to the State's Answer and Motion to Dismiss her Petition for Post-Conviction Relief (Exhibit 30).  On November 20, 2008, the trial court denied Henry's Petition for Post-Conviction Relief without an evidentiary hearing and denied Henry's Motion for Stay of Proceedings in Post-Conviction as moot.  Exhibit 31.

On December 17, 2006, Henry, through counsel, filed a notice of appeal from the denial of her post-conviction relief petition ("Henry II" – Case No. 2008-L-178).  Exhibit 32.  On July 13, 2009, Henry, through counsel, filed her Brief and raised the following assignments of error:

**FIRST ASSIGNMENT OF ERROR**: Because the trial court failed to make findings of fact and conclusions of law regarding Mrs. Henry's second and third grounds for relief, its judgment is not a final and appealable order.

**SECOND ASSIGNMENT OF ERROR**: The trial court abused its discretion by dismissing appellant's post-conviction petition without a hearing.

Exhibit 33.  On October 1, 2009, the State of Ohio filed its Brief (Exhibit 34) and, on October 19, 2009, Henry filed a reply (Exhibit 35).  On March 31, 2010, the Eleventh District Court of Appeals affirmed the judgment of the trial court.  Exhibit 36.   In affirming the trial court's November 20, 2008, judgment, the Eleventh District Court of Appeals found that the trial court's judgment was a final appealable order, the trial court correctly denied Henry's post-conviction petition without a hearing, and the remaining issues were either raised or could have been raised

on direct appeal and therefore res judicata barred their consideration.  Exhibit 36, ¶57, Exhibit 37 (LEXIS version).

On April 12, 2010, Henry filed for Reconsideration of the Eleventh District Court of Appeals' March 31, 2010, decision.  Exhibit 38.   On April 21, 2010, the State of Ohio filed its Response (Exhibit 39) and, on April 29, 2010, Henry filed her Reply (Exhibit 40).  On May 7, 2010, the Eleventh District Court of Appeals overruled Henry's application for reconsideration. Exhibit 41.

On May 17, 2010, Henry, through counsel, filed a notice of appeal with the Ohio Supreme Court (Exhibit 42) and Memorandum in Support of Jurisdiction (Exhibit 43).  In her Memorandum in Support of Jurisdiction, Henry raised the following propositions of law:

**FIRST PROPOSITION OF LAW**: Res judicata does not bar an effective assistance of counsel claim from being raised in postconviction merely because ineffective assistance of counsel was argued in direct appeal, provided the claim in the postconviction is based on evidence outside the record.  The court must examine the substance of the claim to determine whether it is barred by res judicata.

**SECOND PROPOSITION OF LAW**:  When denying a petition for postconviction relief, a trial court must make findings of fact and conclusions of law that are clear, specific and complete and respond to all of petitioner's claims. A judgment entry that addresses some, but not all, of petitioner's grounds for relief is not a final appealable order and must be remanded for full compliance with R.C. 2953.21.

**THIRD PROPOSITION OF LAW**: When a petitioner supports her claim for postconviction relief with affidavits of fact and expert witnesses whose testimony would have comprised essential elements of the defense at trial; documents that were available and should reasonably have been introduced into evidence; affidavits of family members establishing that the defense attorney was hired only after misrepresenting his experience; and affidavits of experienced criminal trial attorneys opining that the defense attorney failed to provide effective assistance of counsel, it is an abuse of discretion for the trial court to dismiss the petition without an evidentiary hearing.

**FOURTH PROPOSITION OF LAW**: When reviewing a trial court's decision to dismiss a postconviction petition without a hearing, an appellate court must use an abuse of discretion standard instead of reviewing the matter de novo.

Exhibit 43.  On June 15, 2010, the State of Ohio filed its Memorandum in Response.  Exhibit 44.

On August 25, 2010, the Ohio Supreme Court denied leave to appeal and dismissed Henry's

appeal as not involving any substantial constitutional question.  Exhibit 45, Case No. 2010-0886.

### D.  Federal Habeas Corpus Petition

On February 11, 2011, Henry filed her petition for writ of habeas corpus ("Petition").

Doc. 1.  In her Petition, Henry asserts the following six grounds for relief:

**GROUND ONE:** Ms. Henry's trial counsel rendered ineffective assistance of counsel, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

**GROUND TWO**: The prosecutor's misconduct at Ms. Henry's trial denied Ms. Henry a fair trial and due process of law, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

**GROUND THREE**: The trial court violated Ms. Henry's rights to a fair trial and due process of law when it allowed into evidence unreliable, prejudicial scientific expert witness testimony, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

**GROUND FOUR**: The trial court violated Ms. Henry's rights to due process and a fair trial when, in the absence of sufficient evidence, the trial court convicted Ms. Henry of aggravated murder and murder, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

**GROUND FIVE**: The trial court denied Ms. Henry's right to due process of law when it failed to conduct an evidentiary hearing regarding the claims and supporting evidence presented within Ms. Henry's petition for postconviction relief under Ohio Revised Code Section 2953.21 et seq., in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

**GROUND SIX**: Ms. Henry's trial counsel rendered ineffective assistance of counsel when he failed to submit at Ms. Henry's trial substantial testimony and evidence supporting Ms. Henry's innocence of aggravated murder and murder, as demonstrated within Ms. Henry's petition for postconviction relief and supplement to her petition for postconviction relief, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

13

Doc. 1, pp. 20-32.

### III. Procedural Barriers to Review

Respondent argues that a portion of Henry's second ground for relief and the entirety of her sixth ground for relief are procedurally defaulted and therefore barred from federal habeas review.

A petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States,* 532 U.S. 374, 381, 121 S.Ct. 1578 (2001).

A federal court may not grant a writ of habeas corpus unless the applicant has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley,* 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845-848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990).

It is well settled that, in order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *Fulcher,* 444 F.3d at 798; *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000).  This means

that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g., Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).  In determining whether a petitioner presented her claim in such a way as to alert the state courts to its federal nature, a federal habeas court should consider whether the petitioner: (1) relied on federal cases employing constitutional analysis; (2) relied on state cases employing constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.  *McMeans,* 228 F.3d at 681.

In situations in which a petitioner has failed to fairly present federal claims to the state courts and a state procedural rule now prohibits the state court from considering them, the claims are considered procedurally defaulted.  *Martin v. Mitchell,* 280 F.3d 594, 603 (6th Cir. 2002). In such situations, while the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006).  To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or must show that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.

When determining whether a claim is barred from habeas corpus review due to petitioner's failure to comply with a state procedural rule, the following four factors are to be analyzed: (1) whether there is a state procedural rule applicable to petitioner's claim and whether

petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986).

### A. The portion of Ground Two that was not presented on direct appeal to the Eleventh District Court of Appeals is defaulted and barred from federal habeas review.

In Ground Two, Petitioner asserts that, as a result of prosecutorial misconduct, she was denied a fair trial and due process of law. Doc. 1, pp. 24-26. In support of her second ground for relief, Henry alleges five instances of prosecutorial misconduct. Doc. 1, pp. 24-26; Doc. 4, pp. 31-32; Doc. 9, p. 18. Of those five instances, the State asserts that Petitioner procedurally defaulted the fifth, i.e., her claim that she is entitled to federal habeas relief because "the prosecutor told the jury during the State's closing argument that one of Ms. Henry's expert witnesses did not give an opinion regarding whether Ms. Henry's son had died in the fire, and that the witness's testimony had no bearing on the case. However, that witness stated that it was virtually impossible for Ms. Henry's son to be alive during the fire." Doc. 4, pp. 31-32, FN1; Doc. 1, p. 26. The State asserts that the fifth instance of alleged prosecutorial misconduct was not presented on direct appeal to the Eleventh District Court of Appeals. Doc. 4, p. 32, FN 1. Accordingly, the State argues that Petitioner has procedurally defaulted that claim because she is now barred by res judicata from presenting that claim in the state court. Doc. 4, p. 32, FN 1.

Petitioner concedes that she did not assert the fifth instance of alleged prosecutorial misconduct in her direct appeal. Doc. 9, p. 18, FN 5. Accordingly, the undersigned agrees with the State that Petitioner has procedurally defaulted her fifth instance of alleged prosecutorial misconduct and the undersigned recommends denial of the portion of Ground Two that relies on

Henry's contention that "the prosecutor told the jury during the State's closing argument that one of Ms. Henry's expert witnesses did not give an opinion regarding whether Ms. Henry's son had died in the fire, and that the witness's testimony had no bearing on the case.  However, that witness stated that it was virtually impossible for Ms. Henry's son to be alive during the fire."  (Doc. 4, p. 32, FN1; Doc. 1, p. 26).

**B.  Ground Six is defaulted and barred from federal habeas review.**

In Ground Six, Petitioner asserts that her "trial counsel rendered ineffective assistance of counsel when he failed to submit at Ms. Henry's trial substantial testimony and evidence supporting Ms. Henry's innocence of aggravated murder and murder, as demonstrated within Ms. Henry's petition for postconviction relief and supplement to her petition for postconviction relief."[8]  Doc. 1, p. 32.  The State asserts, and the undersigned agrees, that Petitioner procedurally defaulted Ground Six.  Although Henry filed a petition for post-conviction relief that contained an ineffective assistance of trial counsel claim, she did not present that claim on direct appeal and she did not present that claim to all the state courts that reviewed her petition for post-conviction relief.  Petitioner does not argue that Ground Six was presented in her direct appeal.  Also, her argument that Ground Six is not procedurally defaulted because she did present it to all the state courts in her post-conviction proceedings is not supported by the record.

In her appeal from the trial court's denial of her post-conviction petition, Henry asserted the following two assignments of error with the following issues for review:

> **FIRST ASSIGNMENT OF ERROR**: Because the trial court failed to make findings of fact and conclusions of law regarding Mrs. Henry's second and third grounds for relief, its judgment is not a final and appealable order.
>
> **Issues Presented for Review**:

---

[8] Petitioner has also asserted ineffective assistance of trial counsel claims in Ground One.  Doc. 1, pp. 20-24.

Whether the judgment entry, which does not contain findings of fact and conclusions of law for two of the five grounds for relief, constitutes a final and appealable order.

**SECOND ASSIGNMENT OF ERROR**: The trial court abused its discretion by dismissing appellant's post-conviction petition without a hearing.

**Issues Presented for Review:**

Whether the trial court abused its discretion in finding that the Petition stated no substantive grounds for relief.

Whether the trial court abused its discretion by implicitly finding the affidavits supporting the post-conviction petition lacked credibility.

Whether it constituted an abuse of discretion for the trial court to find that the issue of the defense attorney's failure to file motions to suppress was res judicata.

Exhibit 33.

While Henry included claims of ineffective assistance of trial counsel in her petition for post-conviction relief (Exhibit 24), Henry did not present, on appeal from the trial court's order denying that petition, a stand-alone assignment of error of ineffective assistance of trial counsel for failing to submit the evidence she sought to have entered through a post-conviction evidentiary hearing nor did she fairly present, in the assignments of error she did raise, a claim of ineffective assistance of counsel.  Exhibit 33.  Although she referred to instances of trial counsel's conduct which she alleged constituted ineffective assistance of counsel when arguing her second assignment of error (Exhibit 33, p. 27), she did not cite to *Strickland v. Washington*, 466 U.S. 668 (1984) and did not argue how, under either prong of the standard enunciated in *Strickland*, she was entitled to post-conviction relief.[9]  A petitioner must present her claims to

---

[9] To establish that her attorney was constitutionally ineffective, a petitioner must demonstrate that (1) the attorney made such serious errors he was not functioning as "counsel" guaranteed by the Sixth Amendment; and (2) counsel's allegedly deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  Under the first prong of the *Strickland* test, a petitioner must show that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case.  *Id*. at 688.  To satisfy the second, "prejudice," prong of the *Strickland* test, a petitioner must demonstrate that a "reasonable probability" exists that, but for counsel's errors, the outcome of the trial would have been different.  *Id*. at 694.

the state courts as federal constitutional issues and not merely as issues arising under state law. *See, e.g., Franklin*, 811 F.2d at 325; *Prather*, 822 F.2d at 1421.   In her post-conviction appeal, Henry did not do so.  Rather, she advanced an abuse of discretion theory. Exhibit 33.  In contrast, she now asserts a stand-alone ineffective assistance of counsel claim.  Since it cannot be said that Henry presented both the factual and legal underpinnings of Ground Six to the state courts, her claim is procedurally barred from federal habeas review. *O'Sullivan,* 526 U.S. at 845-848; *Coleman,* 501 U.S. at 732; *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or must show that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750. Petitioner relies on her argument that she did in fact present a claim of ineffective assistance of counsel in her appeal from the denial of her petition for post-conviction relief and she argues that therefore no  "cause and prejudice" showing is necessary.  Doc. 9, p. 37.  Additionally, in opposition to Respondent's argument that Petitioner cannot excuse her default on the basis that she has been subjected to a fundamental miscarriage of justice, i.e., that she is actually innocent based on new evidence, Petitioner makes a conclusory statement that she has been subjected to a fundamental miscarriage of justice and that the evidence submitted in support of her petition for post-conviction relief establishes this fact. Doc. 9, p. 39.  Since Henry does not argue "cause" or "prejudice" for her default of her sixth ground for relief, and since Henry provides this Court with only a conclusory statement regarding her innocence and does not point to any specific evidence that she contends establishes a fundamental miscarriage of justice, the undersigned concludes that Henry has failed to establish grounds to excuse her default of her sixth ground for relief.

Based on the foregoing, the undersigned concludes that Petitioner procedurally defaulted Ground Six and has failed to overcome the procedural default. Accordingly, the undersigned recommends that Petitioner be denied federal habeas relief on Ground Six.[10]

### IV. Merits Review

#### A. Standard of Review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to Henry's habeas petition because she filed it after the effective date of the AEDPA. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). In particular, the controlling AEDPA provision states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is "contrary to" clearly established federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)). A state court's adjudication only results in an "unreasonable application" of clearly established federal law

---

[10] Respondent also argues that that Petitioner's "claim of ineffective assistance of trial counsel [in her sixth ground for relief] is equally defaulted due to the state appeals court having applied the bar of res judicata where the claim was, or could have been, presented on direct appeal." Doc. 4, p. 52 (citing Exhibit 37, ¶¶52-57). Having determined that Ground Six is procedurally defaulted for the reasons set forth herein, it is not necessary for the Court to address Respondent's alternative procedural default argument.

when the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 599-600 (quoting *Williams*, 529 U.S. at 413).

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, ___ U.S.___, 132 S.Ct. 26, 27, 181 L.Ed.2d 328 (Nov. 7, 2011) (quoting *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 786–87 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 131 S.Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)). The petitioner carries the burden of proof. *Cullen v. Pinholster,* ___ U.S. ___, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011). Henry has not met her burden in this case.

### B. Ground One is without merit.

Petitioner and Respondent agree that Ground One includes nine alleged instances of ineffective assistance of trial counsel. Doc. 1, pp. 20-24, Doc. 4, pp. 19-21; Doc. 9, p. 11. They also agree that the nine alleged instances were presented and considered as part of Petitioner's

direct appeal and therefore are properly before this Court for review.  Doc. 4, pp. 19-21; Doc. 9,

p. 11.  Henry's nine alleged instances of ineffective assistance of trial counsel are:[11]

(1)      trial counsel ". . . failed to adequately combat the State experts' opinions regarding the cause of death, or challenge the testimony based on applicable rules of evidence."  Doc. 4, p. 19 (citing Doc. 1, p. 22);

(2)      trial counsel "[n]ot objecting to allegedly improper remarks suggesting that the decedent 'may have had a blanket covering his face during the time of the fire, thus suggesting that soot and carbon monoxide could have been prevented from entering the deceased's body.'" Doc. 4, pp. 19-20 (citing Doc. 1, p. 22);

(3)      trial counsel "[n]ot objecting during closing argument when the prosecutor told the jury 'that one of Ms. Henry's expert witnesses [Dr. Yowler] did not give an opinion regarding whether Ms. Henry's son had died in the fire, and that the witnesses's testimony had no bearing on the case.  However that witness had stated that it was virtually impossible for Ms. Henry's son to have been alive during the fire.' [Explanation added]"  Doc. 4, p. 20 (citing Doc. 1, pp. 22-23);

(4)      trial counsel "[n]ot objecting to, or requesting the redaction of, 'blanket was admitted into evidence [as State's Exhibit 9b] which was labeled as "BLANKET VICTIM COVERED WITH.' [Explanation added]" Doc. 4, p. 20 (citing Doc. 1, p. 23);

(5)      trial counsel "[n]ot objecting to 'the admission of a CD containing numerous photographs entitled "Parmly Road **homicide**.' (Bold supplied)" Doc. 4, p. 20 (citing Doc. 1, p. 23);

(6)      trial counsel "[n]ot renewing his objection 'to the trial court's determination that Dr. Alan Gurd, the alleged victim's treating physician, could not testify regarding the shortened life expectancy of individuals who suffered from severe cerebral palsy in a case in which such testimony was critical to the jury's determination of the issues.'"  Doc. 4, p. 20 (citing Doc. 1, p. 23);

(7)      trial counsel "[t]elling the jury during defense closing argument about trial counsel's examination of his expert witness, '[W]hen I confronted the opinions of these experts they were forced to admit their opinions were not supported by any literature and their conclusions were not realistic.'" Doc. 4, pp. 20-21 (citing Doc. 4, p. 23, Tr. 1348-50);

---

[11] Instances one through three are addressed *infra* in Section IV(B)(1)(a)-(b) and instances four through nine are addressed *infra* in Section IV(B)(2).

(8)     trial counsel "[t]elling the jury during defense closing argument that 'Dr. Resnick was compelled to admit that his theory was not realistic.'"  Doc. 4, p. 21 (citing Doc. 1, p. 23, Tr. 1357-59); and

(9)     "Finally, trial counsel had already questioned Dr. Resnick, Ms. Henry's renowned expert witness, about what trial counsel referred to as the 'murder.'"  Doc. 4, p. 21 (citing Doc. 1, p. 23, Tr. 1188-90).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. Amend. VI.  A defendant has a Sixth Amendment right not just to counsel but to "reasonably effective assistance" of counsel.  *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged from the benefit of hindsight."  *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).

To establish that her attorney was constitutionally ineffective, Henry must demonstrate that (1) the attorney made such serious errors he was not functioning as "counsel" guaranteed by the Sixth Amendment; and (2) counsel's allegedly deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

Under the first prong of the *Strickland* test, a petitioner must show that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case.  *Id.* at 688.  "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Id.* at 689.

To satisfy the second, "prejudice," prong of the *Strickland* test, a petitioner must demonstrate that a "reasonable probability" exists that, but for her counsel's errors, the outcome

of the trial would have been different.  *Id.* at 694.  "An error by counsel, even if professionally

unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error

had no effect on the judgment."  *Smith v. Jago*, 888 F.2d 399, 404 (6th Cir. 1989), *cert. denied*,

495 U.S. 961 (1990) (quoting *Strickland,* 466 U.S. at 691).

Inasmuch as Henry's claims of ineffective assistance of counsel were adjudicated on the

merits by the Ohio Court of Appeals, this Court must give deference to that adjudication.[12]

*Perkins v. McKee*, 411 Fed. App'x. 822, 828 (6th Cir. 2011).  The Supreme Court recently

emphasized the double layer of deference that federal courts must give state courts in reviewing

*Strickland* claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner
> must show that the state court's ruling on the claim being presented in federal
> court was so lacking in justification that there was an error well understood and
> comprehended in existing law beyond any possibility for fairminded
> disagreement. . . . An ineffective-assistance claim can function as a way to escape
> rules of waiver and forfeiture and raise issues not presented at trial, and so the
> *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial
> inquiry" threaten the integrity of the very adversary process the right to counsel is
> meant to serve. . . . Federal habeas courts must guard against the danger of
> equating unreasonableness under *Strickland* with unreasonableness under §
> 2254(d). When § 2254(d) applies, the question is not whether counsel's actions
> were reasonable. The question is whether there is any reasonable argument that
> counsel satisfied *Strickland's* deferential standard.

*Richter,* 131 S. Ct. at 786-88.

In addressing Henry's claims, the Ohio Court of Appeals correctly recognized that

*Strickland* governs claims of ineffective assistance of counsel.  Exhibit 1, ¶¶ 50-58.

---

[12] Henry's nine alleged instances of ineffective assistance of counsel in Ground One do not correspond directly to
the nine issues asserted by Petitioner in her direct appeal.  However, as discussed below, Henry's nine alleged
instances of ineffective assistance of counsel in Ground One were addressed by the Ohio Court of Appeals.  Exhibit
1, ¶¶ 39-96.

As demonstrated below, the Ohio Court of Appeals' decision is not contrary to, and the Court of Appeals did not unreasonably apply, *Strickland* when it determined that Henry's trial counsel's performance did not constitute ineffective assistance of counsel.[13]

1. **Ground One, instances 1 – 3: Alleged ineffective assistance of counsel in failing to object to the State's expert testimony, the prosecutor's suggestion that the decedent may have had a blanket covering his face during the time of the fire, and/or the prosecutor's statements during closing regarding Dr. Yowler, one of Ms. Henry's experts.**

   a. **Ground One, instance 1: Alleged ineffective assistance of counsel relating to State's expert Dr. Bligh-Glover.[14]**

In evaluating whether Henry's trial counsel's performance relative to his handling of the expert testimony given by the coroner and State's expert Dr. Bligh-Glover constituted ineffective assistance of counsel, the Ohio Court of Appeals stated:

> **[\*P78]** Trial tactics (including a failure to object) do not substantiate a claim of ineffective assistance of counsel.

> **[\*P79]** With respect to appellant's third issue, Dr. Bligh-Glover testified that since there was no sign of death by natural causes, based on the physical findings, Michael's death was a homicide. He indicated that many things can cause a foam cone, but ultimately it is due to damage in the airways. Dr. Bligh-Glover concluded that Michael was alive during the fire. The record establishes that Dr. Bligh-Glover's verdict was based on a suitable foundation. As such, appellant's counsel was not deficient for failing to object to Dr. Bligh-Glover's testimony as to his verdict.

Exhibit 1, ¶¶78-79.

---

[13] The undersigned finds unpersuasive Petitioner's reliance upon portions of the Ohio Court of Appeals' opinion that suggest the court had concerns about trial counsel's performance or the "workability of *Strickland*" to support her claim that the Ohio Court of Appeals unreasonably applied *Strickland* or that federal habeas relief is warranted. Doc. 9, pp. 13-14, 15-16. As demonstrated herein, notwithstanding the Ohio Court of Appeals' sentiments regarding trial counsel or the "workability of *Strickland*," (Exhibit 1, ¶¶ 60-63), the Ohio Court of Appeals did not unreasonably apply the standard as enunciated in *Strickland* and ultimately concluded that trial counsel was not ineffective.

[14] On appeal, Henry alleged ineffective assistance of counsel relative to trial counsel's failure to object to the testimony of Dr. Bligh-Glover but did not raise any claims relative to any other state expert opinions regarding the cause of death. Exhibit 10, pp. 18-22. Accordingly, to the extent that Henry is claiming ineffective assistance of counsel relative to any state experts other than Dr. Bligh-Glover, those claims are defaulted.

When reaching its conclusion, the Ohio Court of Appeals did not unreasonably apply *Strickland*. After reviewing the record, including Dr. Bligh-Glover's testimony, the Court of Appeals concluded that Dr. Bligh-Glover's opinion was based on a suitable foundation and therefore concluded that trial counsel was not deficient in failing to object. Exhibit 1, ¶79.

Henry makes two arguments: (1) the Ohio Court of Appeals did not explain its conclusion that Dr. Bligh-Glover's opinion was based on a suitable foundation; and (2) Dr. Bligh-Glover's opinion was not in fact supported by a suitable foundation. Doc. 9, p. 14.

As to Petitioner's first argument, the Ohio Court of Appeals' conclusion that Dr. Bligh-Glover's opinion was based on a suitable foundation was not merely conclusory but rather was based on its review of the record, including Dr. Bligh-Glover's testimony that there were no signs of death by natural causes. Exhibit 1, ¶79. Moreover, as noted by the Ohio Court of Appeals, "[t]rial tactics (including a failure to object) do not substantiate a claim of ineffective assistance of counsel." Exhibit 1, ¶78. "[A]ny single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial to a client that failure to object essentially defaults the case to the state." *Lundgren v. Mitchell,* 440 F.3d 754, 774 (6th Cir. 2006). "Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot be reasonably have been said to have part of trial strategy or tactical choice." *Id.* Here, trial counsel did challenge Dr. Bligh-Glover and trial counsel did not consistently fail to use objections regarding the testimony of Dr. Bligh-Glover. For example, during his cross-examination of Dr. Bligh-Glover, trial counsel challenged the basis of Dr. Bligh-Glover's opinions (Exhibit 47, Tr. 319, 321-322, 326, 328-333) and his ability to render opinions outside his specialty (Exhibit 47, Tr. 333-338). Further, although his objections were overruled, trial counsel did object to testimony being offered by Dr. Bligh-

Glover, including objections based on lack of foundation, during his testimony about carbon monoxide and soot.  Exhibit 47, Tr. 375, 376, 378, 379.

While Petitioner may have waived her second argument,[15] to the extent that she has not, that argument (that Dr. Bligh-Glover's opinion was not in fact supported by a suitable foundation and therefore trial counsel was ineffective for not objecting) is without merit because, as discussed in connection with the Court's analysis of Ground Three, it is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Hodge v. Haeberlin*, 579 F.3d 627, 648-649 (6th Cir. 2009) (concluding that where a state court determines upon "direct review that the evidence and arguments were not objectionable," a federal court will defer to the state court's finding that the petitioner did not suffer from ineffective assistance of counsel).  A federal court "must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (internal quotation and citations omitted).  Thus, it is not for this Court to reassess the Ohio Court of Appeals' decision regarding an evidentiary issue, i.e., the adequacy of the foundation for Dr. Bligh-Glover's opinion.

Based on the foregoing, Petitioner's argument that trial counsel's handling of Dr. Bligh-Glover's testimony constituted ineffective assistance of counsel is without merit.

---

[15] To support her contention that Dr. Bligh-Glover's verdict was not supported by a suitable foundation, Henry argues that Dr. Bligh-Glover admitted that reputable authorities regarding fire-related deaths did not support his findings. Doc. 9, p. 14.  In so arguing, she cites to over 100 pages of the trial transcript leaving the Court to guess which portions of those 100 plus pages she relies on.  Doc. 9, p. 14.  Thus, Petitioner has arguably waived her second argument.  *See McPherson v. Kelsey*, 125 F.3d 989, 996 (6th Cir. 1997) (agreeing that "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citations omitted).

**b.  Ground One, instances 2 and 3: Alleged ineffective assistance of counsel in failing to object to the prosecutor's remarks about a blanket and Dr. Yowler.**

In evaluating whether Henry's trial counsel's failure to object to certain of the prosecutor's remarks or questions constituted ineffective assistance of counsel, the Ohio Court of Appeals stated:

> **[\*P81]** With respect to her sixth issue, appellant's counsel was not ineffective for failing to object to conduct on the part of the prosecutor during trial because no misconduct occurred and the outcome was not affected. A reading of the transcript does not establish that the prosecutor's remarks and/or questions deprived appellant of a fair trial.

Exhibit 1, ¶81.

Here, the Ohio Court of Appeals concluded upon direct review that there was no misconduct on the part of the prosecutor.  Exhibit 1, ¶81.  Accordingly, this Court will defer to the state court's finding that the petitioner did not suffer from ineffective assistance of counsel. *See Hodge v. Haeberlin*, 579 F.3d 627, 648-649 (6ᵗʰ Cir. 2009) (concluding that, where a state court determines upon "direct review that the evidence and arguments were not objectionable," a federal court will defer to the state court's finding that the petitioner did not suffer from ineffective assistance of counsel); *see also Richter*, 131 S.Ct. at 786 (indicating that "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal.") (internal citations omitted). Additionally, although overruled, trial counsel did object when the prosecutor posed a question to Dr. Bligh-Glover about what effect a blanket covering Ms. Henry's son's face would have had on his ability to breathe soot.  Exhibit 47, Tr. 378-379.  Further, through his examination of Dr. Dibdin, trial counsel attempted to discredit the suggestion by the State that, if the blanket or

comforter located by or on Michael had been covering his face, it would explain why there were no abnormal levels of soot or carbon monoxide.  Exhibit 50, Tr. 1027.

Based on the foregoing, Petitioner's argument that trial counsel was ineffective for not objecting to certain conduct of the prosecutor is without merit.

> **2.**    **Ground One, instances 4 – 9: Alleged ineffective assistance of counsel relating to trial counsel's handling of evidence, presentation of Dr. Gurd as a witness, closing argument, and questioning Dr. Resnick about the "murder."**

In evaluating whether Henry's trial counsel was ineffective in his handling of evidence, presentation of Dr. Gurd as a witness, closing argument, and questioning of Dr. Resnick, the Ohio Court of Appeals stated:

> **[\*P92] EIGHTH AND NINTH ISSUES**:
>
> **[\*P93]** Because appellant's eighth and ninth issues are interrelated, we will address them in a consolidated fashion. We disagree with appellant that her counsel was ineffective due to the manner in which exhibits were offered, and that he was inexperienced in handling such a case.
>
> **[\*P94]** First, we note that there was open discovery throughout this case. Also, in Ohio, a properly licensed attorney is presumed competent. See *State v. Gondor, 112 Ohio St.3d 377, 2006 Ohio 6679, at P62, 860 N.E.2d 77.* **[\*\*30]** There is no evidence that appellant's counsel was incompetent. Also, there is no suggestion in the record that appellant was dissatisfied with her attorney, and, in fact, requested that he be appointed on the case.

Exhibit 1, ¶¶92-93.

The Ohio Court of Appeals concluded that trial counsel was not ineffective in regard to the manner in which exhibits were offered, his failure to renew his objection to the trial court's pre-trial ruling excluding the testimony of Dr. Gurd regarding life expectancy of individuals with cerebral palsy, the manner in which he handled closing argument, and his questioning of Dr. Resnick about the "murder."[16]  Exhibit 1, ¶¶92-94.  Additionally, as discussed *supra,* trial

---

[16] As noted by the Ohio Court of Appeals, it considered Henry's eighth and ninth issues in her first assignment of error together.  Henry's arguments relative to Dr. Gurd, trial counsel's closing argument and trial counsel's

counsel did object when the prosecutor posed a question to Dr. Bligh-Glover about what effect a blanket covering Ms. Henry's son's face would have had on his ability to breathe soot (Exhibit 47, Tr. 378-379) and attempted to discredit the suggestion by the State that, if the blanket or comforter located by or on Michael had been covering his face, it would explain why there were no abnormal levels of soot or carbon monoxide. Exhibit 50, Tr. 1027. Further, while Dr. Gurd did not testify regarding the life expectancy of individuals with cerebral palsy, during trial counsel's cross-examination of Dr. Bligh-Glover, the state's expert, Dr. Bligh-Glover did agree that individuals with cerebral palsy do have a decreased life expectancy although he did not concede that 90% of individuals with cerebral palsy do not make it to 20 years of age. Exhibit 47, Tr. 360-364.

Even if trial counsel's questioning of Dr. Resnick, his closing argument or other alleged errors were professionally unreasonable, *Strickland* "places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different." *Wong v. Belmontes*, 130 S.Ct. 383, 390-391 (2009). Petitioner has failed to meet this burden. *See Smith v. Jago*, 888 F.2d 399, 404 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990) (quoting *Strickland,* 466 U.S. at 691) ( "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.")

Petitioner has failed to establish that the state court's decision as to her trial counsel's performance on these issues was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

---

questioning of Dr. Resnick about the "murder" were presented as part of her eighth and/or ninth issues along with her arguments regarding objections to the admission of certain evidence. Exhibit 10, p. v. and pp. 30-35. The undersigned will also address those arguments, i.e., instances four through nine in Ground One, together.

disagreement." *Bobby v. Dixon*, ___ U.S.___, 132 S.Ct. 26, 27,  181 L.Ed.2d 328 (Nov. 7, 2011)

(quoting *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 786–87 (2011).

Based on the foregoing, the undersigned concludes the Ohio Court of Appeals' decision

is not contrary to, and the Court of Appeals did not unreasonably apply, *Strickland* when it

concluded that trial counsel was not ineffective.  Accordingly, the undersigned recommends that

Henry be denied federal habeas relief on Ground One.

### C.  Ground Two is without merit.

Petitioner and Respondent agree that Ground Two includes five alleged instances of

prosecutorial misconduct. Doc. 1, pp. 24-26, Doc. 4, pp. 31-32; Doc. 9, p. 18.  They also agree

that only four of those instances[17] were presented and considered as part of Petitioner's direct

appeal.  Doc. 4, pp. 31-32; Doc. 9, p. 18.  Only those four instances therefore are properly before

this Court for review.  Henry's four non-defaulted alleged instances of prosecutorial misconduct

are:

> (1)     suggesting that the decedent had a blanket covering his face, suggesting
>          that the blanket could have prevented residual soot and carbon
>          monoxide from being present in the decedent's body so as to buttress
>          the prosecution's theory that the decedent was alive in the fire for a
>          period of time. (Doc. 1, p. 25);
>
> (2)     suggesting during closing argument that the foam cone found around the
>          victim's mouth supported the prosecution's theory that the decedent
>          was alive at the time of the fire (Doc. 1, p. 25);
>
> (3)     disparaging the defense scientific evidence during closing as
>          "propaganda" (Doc 1, p. 25 (citing Tr. 1367-69)); and
>
> (4)     indicating during closing that Henry was a liar by stating, "So the
>          evidence becomes what's the only evidence whether he was dead or
>          alive or not and the defense suggests the only credible evidence is the

---

[17] As discussed *supra*, Petitioner agrees that her fifth alleged instance of prosecutorial misconduct was not presented
to the state court of appeals.  Doc. 9, p. 18, FN 5.  Accordingly, Henry's fifth instance of prosecutorial misconduct
has been defaulted.

> defendant's statements. I have yet to see a person charged with murder
> come in and tell the jury yeah, I did it, right. Yeah, I did it, okay, swear
> to tell the truth" (Doc. 1, pp. 25-26 (citing Tr. 1369-71)).

When reviewing a claim of prosecutorial misconduct, "[t]he relevant question is whether

the prosecutor's comments 'so infected the trial with unfairness as to make the resulting

conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(citing

*Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).  "[T]he touchstone of due process analysis in

cases of alleged misconduct is the fairness of the trial, not the culpability of the prosecutor."

*Smith v. Phillips*, 455 U.S. 209, 219 (1982).  The Sixth Circuit, in recognition of the deferential

standard of review applied to claims of prosecutorial misconduct, stated that:

> Even if the prosecutor's conduct was improper or even universally
> condemned, we can provide relief only if the statements were so flagrant
> as to render the entire trial fundamentally unfair.  Once we find that a
> statement is improper, four factors are considered in determining whether
> the impropriety is flagrant: (1) the likelihood that the remarks would
> mislead the jury or prejudice the accused, (2) whether the remarks were
> isolated or extensive, (3) whether the remarks were deliberately or
> accidentally presented to the jury, and (4) whether other evidence against
> the defendant was substantial.

*Bowling v. Parker*, 344 F.3d 487, 512-513 (6th Cir. 2003) (internal citations and quotations

omitted).

In addressing Henry's claims, the Ohio Court of Appeals applied the federal standard

through use of state law decisions that relied upon the federal standard and stated:

> **[*P98]** In her second assignment of error, appellant contends that she was
> denied her constitutional right to a fair trial under the *Sixth* and *Fourteenth*
> *Amendments* because of prosecutorial misconduct at trial during closing
> argument. She presents the following three issues for our review.

> **[*P99]** "1. Whether it constituted reversible misconduct for the prosecutor to
> introduce theories and testimony on cause of death that were not supported by
> reliable, scientific evidence.

> **[*P100]** "2. Whether it constituted reversible misconduct for the prosecutor to
> offer facts that were not in evidence to support the State's theory of the case.

[*P101] "3. Whether it constituted reversible misconduct for the prosecutor to attack the defense expert with false allegations that were not made in good faith."

[*P102] """In general terms, the conduct of a prosecuting attorney during trial cannot [**31] be made a ground of error unless that conduct deprives the defendant of a fair trial.""" 0130, *State v. Goodman, 11th Dist. No. 2006-T-2007 Ohio 6252, at P50*, citing *State v. Maurer (1984), 15 Ohio St.3d 239, 266, 15 Ohio B. 379, 473 N.E.2d 768*.

[*P103] With respect to prosecutorial misconduct, the Supreme Court in *State v. Slagle (1992), 65 Ohio St.3d 597, 607, 605 N.E.2d 916*, stated: "[w]hen we review a prosecutor's closing argument we ask two questions: 'whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.' *State v. Smith (1984), 14 Ohio St.3d 13, 14, 14 Ohio B. 317, 470 N.E.2d 883 ****. The closing argument is considered in its entirety to determine whether it was prejudicial. *State v. Moritz (1980), 63 Ohio St.2d 150, 157, 407 N.E.2d 1268 ****." (Parallel citations omitted.)

[*P104] "Counsel is generally given latitude during closing arguments to state what the evidence has shown and what inferences can be made by the jury." *State v. Hearns, 11th Dist. No. 2002-P-0050, 2004 Ohio 385, at P15*, citing *State v. Davis (1996), 76 Ohio St.3d 107, 117, 1996 Ohio 414, 666 N.E.2d 1099*. In determining whether the prosecutor's statements affected a substantial right of the defendant, an appellate court should consider the following factors: "(1) the nature of the remarks; [**32] (2) whether an objection was made by defense counsel; (3) whether the court gave any corrective instructions; and (4) the strength of the evidence presented against the defendant." *Hearns, supra, at P15*, citing *State v. Braxton (1995), 102 Ohio App.3d 28, 41, 656 N.E.2d 970*.

[*P105] FIRST ISSUE:

[*P106] With respect to her first issue, we disagree with appellant that it constituted reversible misconduct for the prosecutor to introduce theories and testimony on cause of death that were not supported by reliable, scientific evidence. The record reveals that the testimony of Dr. Bligh-Glover, Dr. Raaf, and Hanni, was supported by reliable, scientific evidence and was not objected to during trial. There is no evidence that the state deliberately attempted to mislead the jury by eliciting what appellant alleges to be "junk science" opinions.

[*P107] Appellant's first issue is without merit.

[*P108] SECOND ISSUE:

[*P109] Regarding her second issue, appellant contends that it constituted reversible misconduct for the prosecutor to offer facts that were not in evidence to support the state's theory of the case. We disagree. A review of the transcript from the prosecutor's opening statement as well as closing arguments does not reveal any misconduct. [**33] None of the state's assertions during opening statements was outside the realm of the evidence submitted. Specifically, the prosecutor correctly made reference to the fact that the coroner's office ruled out Michael's death by natural cause, which was supported by the testimony of Dr. Bligh-Glover

and Dr. Raaf. Dr. Raaf's testimony supported the state's assertion that the presence of a foam cone proved that Michael was alive at the time of the fire. In addition, none of the state's contentions went beyond the latitude afforded either side during closing arguments, which the jury was told was not evidence.

[*P110] Appellant's second issue is without merit.

[*P111] **THIRD ISSUE**:

[*P112] In her third issue, appellant maintains it constituted reversible misconduct for the prosecutor to attack Dr. Didbin with false allegations that were not made in good faith. We disagree. During cross-examination, the prosecutor accused Dr. Didbin of having a "checkered past," which included terminations. Numerous allegations were admitted and proven, but Dr. Didbin's license was not revoked.

[*P113] The court in *State v. Lowe, 164 Ohio App.3d 726, 2005 Ohio 6614, at P10-11, 843 N.E.2d 1243*, stated:

[*P114] "By its nature, cross-examination often involves a tentative [**34] and probing approach to testimony given on direct examination. *State v. Gillard (1988), 40 Ohio St.3d 226, 231, 533 N.E.2d 272, 535 N.E.2d 315* ***. Therefore, the examiner need not lay an evidentiary foundation before posing questions upon cross-examination. It is sufficient if there is a good-faith basis to question the witness on the subject. Id.

[*P115] "Where the good-faith basis for a question is not challenged at the trial level, it is presumed that a good-faith basis exists. 'Since the prosecutor's good-faith basis for asking these questions was never challenged, we presume she had one(.)' *Gillard, supra, at 231.* See, also, *State v. Davie (1997), 80 Ohio St.3d 311, 322, 1997 Ohio 341, 686 N.E.2d 245* ***." (Parallel citations omitted.)

[*P116] Here, no objection was made by defense counsel. Therefore, we must presume that a good-faith basis for the questioning existed. *Gillard, supra.* We find no misconduct by the prosecutor and/or no unfair prejudice to appellant.

[*P117] Appellant's third issue is without merit.

[*P118] Appellant's second assignment of error is not well-taken.

Exhibit 1, ¶¶98-118.

The Ohio Court of Appeals concluded that the prosecutor's conduct was not improper.

Exhibit 1, ¶¶98-118.  In reaching this conclusion, the Ohio Court of Appeals referenced specific

portions of the record, including opening and closing statements, that led the court to conclude

that the prosecutor did not act improperly.  Exhibit 1, ¶¶106, 109, 112.  Additionally, the Ohio

Court of Appeals indicated that the jury was informed that counsel's arguments were not

evidence.  Exhibit 1, ¶109.  Petitioner sets forth many arguments as to why the conduct of the prosecutor was improper.  Doc. 9, pp. 18-23.  However, given the deference afforded the Ohio Court of Appeals' decision, it is not for this Court to engage in a de novo review of the evidence.  Rather, this Court must determine whether the Ohio Court of Appeals unreasonably applied the federal standard applicable to claims of prosecutorial misconduct.  Petitioner indicates that "claims of prosecutorial misconduct turn upon a case's unique facts, and 'only a full view will reveal whether a constitutional violation took place.'"  Doc. 9, p. 17 (citing *Cook v. Bordenkircher*, 602 F.2d 117, 120 (6th Cir. 1979)).  After conducting this review, and in consideration of the deference afforded the Ohio Court of Appeals' decision, the undersigned concludes that the Petitioner is unable to establish that the state court's decision that there was no prosecutorial misconduct was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Bobby v. Dixon*, ___ U.S.___, 132 S.Ct. 26, 27, 181 L.Ed.2d 328 (Nov. 7, 2011) (quoting *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 786–87 (2011).

Even if it were determined that the prosecutor's remarks were improper, Petitioner cannot show that the conduct was so flagrant as to warrant a finding of a denial of due process.  The jury was not precluded from hearing the defense's theory of the case, i.e., that Michael died before the fire.  The defense had the opportunity to and did cross-examine the State's witnesses on multiple issues and/or facts including those that Petitioner claims were improperly introduced into trial, i.e., a possible blanket covering Michael, and the State's theory regarding the presence of a foam cone.  Also, while Petitioner asserts that the prosecutor's alleged misconduct was not isolated and permeated the entire atmosphere of the trial, a review of the transcript of Petitioner's trial, which took place over several days, does not show that the prosecutor's conduct so infected

the trial with unfairness that Henry was denied due process.  *See Donnelly v. DeChristoforo*, 416 U.S. 637 (1974).

For the foregoing reasons, the undersigned concludes that the Ohio Court of Appeals' decision is not contrary to, and the Court of Appeals did not unreasonably apply federal law, when it concluded that the prosecutor's conduct was not improper.  Further, even if the prosecutor were found to have acted improperly, Henry has not demonstrated that the impropriety so infected her trial with unfairness that she was denied her right to due process.  *See Donnelly*, 416 U.S. 637.  Accordingly, the undersigned recommends that Henry be denied federal habeas relief on Ground Two.

**D.  Ground Three is without merit.**

In Ground Three, Petitioner asserts that the trial court violated her right to a fair trial and due process when it allowed into evidence unreliable, prejudicial scientific evidence.  Doc. 1, pp. 26-28, Doc. 9, pp. 23-30.  Henry challenges the admission of expert testimony from Dr. Bligh-Glover, the doctor who conducted the autopsy of Michael Henry; and Dr. Raaf, a retired Chief Deputy County Coroner.  Doc. 9, pp. 23-30.  Petitioner claims that these experts lacked the "specialized knowledge, skill, experience, training, or education regarding fire dynamics, which formed the bases of their cause-of-death conclusions."  Doc. 9, pp. 27-28 (relying on Ohio Evid. R. 702(B)).  She also claims that these experts' testimony and theories regarding Michael's cause of death "were not based on reliable scientific information, and the witnesses admitted that their theories were not backed by such information."  Doc. 9, pp. 28 (relying on Ohio Evid. R. 702(C)).

In addressing Henry's claims regarding the admission of the testimony of the State's forensic experts, the Eleventh District Court of Appeals stated:

[*P120] In her third assignment of error, appellant alleges that she was denied her rights to due process and a fair trial under the *Fifth*, *Sixth*, and *Fourteenth Amendments* because [**35] the trial court committed clear error in its rulings, causing significant, unfair prejudice to her. She presents the following five issues for our review:

\*\*\*

[*P122] "2. Whether the trial court committed reversible, prejudicial error in permitting numerous witnesses to testify as experts when their testimony did not appear to be reliable and scientifically valid.

\*\*\*

[*P129] SECOND ISSUE:

[*P130] Regarding her second issue, the trial court did not err by permitting state witnesses to testify as experts because their testimony was reliable and scientifically valid.

[*P131] *Evid.R. 702* provides:

[*P132] "A witness may testify as an expert if all of the following apply:

[*P133] "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

[*P134] "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

[*P135] "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

[*P136] "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable [**37] or is validly derived from widely accepted knowledge, facts, or principles;

[*P137] "(2) The design of the procedure, test, or experiment reliably implements the theory;

[*P138] "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."

[*P139] In the case at bar, Hanni was not technically tendered as an expert on the stand, however, no objection was made by defense counsel with regard to his testimony. Dr. Bligh-Glover, Dr. Raaf, and Hanni were all qualified as experts under *Evid.R. 702* because each of their testimony related to matters beyond the knowledge or experience possessed by lay persons. Also, the record establishes that each of the three was qualified as experts by specialized knowledge, skill, experience, training, and education. In addition, the testimony of Dr. Bligh-

Glover, Dr. Raaf, and Hanni was based on reliable scientific, technical, or other specialized information.

[*P140] Appellant's second issue is without merit.

\*\*\*

[*P154] Appellant's third assignment of error is not well-taken.

Exhibit 1, ¶¶120, 122, 129-140, 154.

Petitioner contends that the Ohio Court of Appeals' analysis regarding Dr. Bligh-Glover and Dr. Raaf is brief.  Doc. 9, p. 27.  However, the Ohio Court of Appeals considered Petitioner's claim that she had been denied her right to due process of law and a fair trial based on trial court evidentiary rulings relative to Dr. Bligh-Glover and Dr. Raaf.  Exhibit 1, ¶¶120, 122, 129-139.  The Ohio Court of Appeals concluded that the testimony of Dr. Bligh-Glover and Dr. Raaf was admissible under Ohio Evid. R. 702 and therefore Henry's claim had no merit.[18] Exhibit 1, ¶¶130-140.

Generally, a state court's ruling regarding the admissibility of evidence is not a cognizable federal habeas claim.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Bell v. Arn*, 536 F.2d 123, 125-126 (6th Cir. 1976).  "[I]t is not the province of a federal habeas court to reexamine state-court determination on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle*, 502 U.S. at 67-68.  Only where an error in a state evidentiary ruling is so prejudicial that it deprives the defendant of due process and a fair trial

---

[18] The Ohio Court of Appeals also noted that Mr. Hanni was not technically tendered as an expert and there was no objection to his testimony.  Exhibit 1, ¶139.  Except for a brief mention of the testimony of a State of Ohio fire investigator, Mr. Chuck Hanni, and referring the Court to Petitioner's Ground Six analysis in a footnote , Petitioner does not elaborate on her claimed bases for federal habeas relief based on the admission of Mr. Hanni's testimony. Doc. 1, p. 27; Doc. 9, pp. 26-27, FN 7.  Accordingly, the Court will not address Mr. Hanni's testimony under the third ground for relief.  *See McPherson v. Kelsey*, 125 F.3d 989, 996 (6th Cir. 1997) (agreeing that "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citations omitted).

will such a claim warrant federal habeas relief.  *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1983).

To demonstrate that the trial court's evidentiary ruling was so prejudicial, Petitioner offers a conclusory statement that "if the erroneously admitted testimony had not been admitted, Ms. Henry would not have been convicted of aggravated murder and murder." Doc. 9, pp. 29-30. Petitioner's argument ignores the fact that the State's experts' testimony was not the only evidence that the jury heard.  In addition to hearing from the State's experts, the jury heard from the defense experts regarding the defense's theory of the case, i.e., that Michael had died before the fire (Exhibit 1, ¶¶ 22-23) as well as from the defense's psychiatric expert (Exhibit 1, ¶ 25). Much additional evidence was presented to the jury, including evidence regarding the events leading up to and following the fire as well as evidence retrieved from the scene of the fire.[19] Exhibit 1, ¶¶ 11, 12, 13, 14, 15, 16, 17, 18, 25.  Thus, even if the Court were to conclude that the trial court incorrectly allowed the State's experts to testify, the Petitioner has not demonstrated that admission of that evidence was so prejudicial that it deprived her of due process and a fair trial to warrant federal habeas relief.  *Cooper*, 837 F.2d at 286.

Because Petitioner has failed to demonstrate a due process violation, the undersigned concludes that Ground Three is not cognizable and therefore recommends that Henry be denied federal habeas relief on Ground Three.

### E.  Ground Four is without merit.

In Ground Four, Petitioner asserts that the trial court violated her right to a fair trial and due process when, in the absence of sufficient evidence, she was convicted of aggravated murder and murder.  Doc. 1, pp. 28-29, Doc. 9, pp. 30-34.

---

[19] *See also* FN 20, p. 44 below.

On federal habeas review, a state court's determination regarding a sufficiency of evidence claim is entitled to a "double layer" of deference. *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).  The first layer of deference goes to the factfinder; the second goes to the state reviewing court as required by the AEDPA.  *Id.*  As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), deference is due to the jury's finding of guilt because the standard, announced in *Jackson v. Virginia*, 443 U.S. 307 (1979) is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.*  This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  The standard is not whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  In making this determination, a court does not reweigh the evidence or redetermine the credibility of the witnesses.  *Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003).  In addition, circumstantial evidence alone may be sufficient to support a conviction.  *Newman v. Metrish*, 543 F.3d 793, 796 (6th Cir. 2008) (internal citation omitted).  In considering a sufficiency claim, "circumstantial evidence is entitled to equal weight as direct evidence."  *Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007).

Ultimately, even if a review of the evidence were to lead to the conclusion that a rational trier of fact could not have found guilt beyond a reasonable doubt, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable."  *Brown v. Konteh*, 567 F.3d at 205*; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).  A claim that the evidence was constitutionally insufficient to support a

conviction is a mixed question of law and fact. *Starr v. Mitchell*, 234 F.3d 1270, *3 (6th Cir. 2000)(unpublished).   Thus, "a writ of habeas corpus may be issued for evidence insufficiency only if the state court adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' 28 U .S.C. § 2254(d)(1), or was based on 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,' 28 U.S.C. § 2254(d)(2)." *Id.*

In addressing Henry's sufficiency of the evidence claim, the Eleventh District Court of Appeals applied the federal standard through use of state law decisions that relied upon the federal standard and stated:

> **[*P156]** In her fourth assignment of error, appellant maintains that the jury's decision finding her guilty of either homicide charge was not supported by sufficient evidence. She presents the following single issue for our review:
>
> **[*P157]** "1. Whether there was sufficient evidence to support a homicide conviction when the physical evidence established that it was impossible for Michael to have been alive when the fire started."
>
> **[*P158]** As this court stated in *State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L082, 1994 Ohio App. LEXIS 5862, at *13-14*:
>
> **[*P159]** "'Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while 'manifest weight' contests the believability of the evidence presented.
>
> **[*P160]** """(***) The test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, **[**41]** any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. *The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence*. ***"'
>
> **[*P161]** "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence 'in a light most favorable to the prosecution,' *** '(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.' ***" (Emphasis sic.) (Citations omitted.)

[*P162] "*** [A] reviewing court must look to the evidence presented *** to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt." *State v. March (July 16, 1999), 11th Dist. No. 98-L-065, 1999 Ohio App. LEXIS 3333, at *8*. The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. *State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492*, [**42] paragraph two of the syllabus. Further, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. *State v. Dennis (1997), 79 Ohio St.3d 421, 430, 1997 Ohio 372, 683 N.E.2d 1096*.

[*P163] *R.C. 2903.01(A)*, aggravated murder, provides in part: "No person shall purposely, and with prior calculation and design, cause the death of another ***."

[*P164] *R.C. 2903.02(B)*, murder, provides: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of *section 2903.03* or *2903.04 of the Revised Code*."

[*P165] In the case sub judice, the state presented sufficient evidence to support a homicide conviction, showing that it was possible for Michael to have been alive when the fire started. Dr. Bligh-Glover, Dr. Raaf, and Hanni all provided testimony demonstrating that Michael was alive at the time that appellant set the fire.

[*P166] Pursuant to *Schlee, supra*, considering the evidence in a light most favorable to the prosecution, the jury could have found appellant guilty of homicide beyond a reasonable [**43] doubt.

[*P167] Appellant's fourth assignment of error is without merit.

Exhibit 1, ¶¶156-167.

The Ohio Court of Appeals thus concluded that there was sufficient evidence to support the convictions. Exhibit 1, ¶¶156-167.

Both the aggravated murder statute (O.R.C. § 2903.01(A)) and the murder statute (O.R.C. § 2903.02(B)) under which Petitioner was convicted include causation as an element, i.e., the defendant must cause the death of another. Exhibit 1, ¶¶163-164. Petitioner asserts that she is entitled to federal habeas relief because "there was insufficient evidence to prove beyond a reasonable doubt that Ms. Henry caused her son's death." Doc. 1, p. 28; Doc. 9, p. 30. Petitioner's defense and her arguments before this Court rely on the defense's position that Michael, Henry's son,

was dead at the time of the fire and on her underlying claim that the testimony of Drs. Bligh-Glover and Dr. Raaf to the contrary was unreliable.  Doc. 1, pp. 28-29, Doc 9, pp. 31-33.  However, as discussed *supra*, the Ohio Court of Appeals had already determined that there was no error in the trial court's admission of the State's evidence that it was possible that Michael was alive when the fire started.  Exhibit 1, ¶139.  The Ohio Court of Appeals concluded that the State presented sufficient evidence to support a homicide conviction and that, when considering that evidence *in a light most favorable to the prosecution*, the jury could have found Henry guilty of homicide beyond a reasonable doubt.  Exhibit 1, ¶¶165-166 (emphasis supplied).

First, deference is due the jury's verdict based on the evidence before it.  *Brown*, 567 F.3d at 205.  Further, in assessing whether the jury's decision was a rational one, it is not for this Court to reweigh the evidence or judge the credibility of the witnesses.  *Matthews*, 319 F.3d at 788.  The undersigned cannot conclude under *Jackson* that, when viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. 307.

Also, contrary to Petitioner's argument, notwithstanding the Ohio Court of Appeals' use of the word "possible," the Ohio Court of Appeals properly applied the *Jackson* standard, i.e., it determined that, "considering the evidence in a light most favorable to the prosecution, the jury could have found appellant guilty of homicide beyond a reasonable doubt."  Exhibit 1, ¶166; *See Jackson*, 443 U.S. 307.  This is the correct standard and it was not incorrectly applied.  Both the prosecution and defense had their experts and theories.  Testimony and evidence determined to be reliable was admitted and presented to the jury.  Dr. Bligh-Glover testified that it was his opinion that Michael died of homicidal violence and that he was alive at the time of the fire. Exhibit 47, Tr. 306-307, 384.

Dr. Raaf testified that it was her opinion that Michael died from asphyxia and burns as a result of the fire.[20]  Exhibit 49, Tr. 741, 749.

> For the foregoing reasons, the undersigned recommends that Henry be denied federal habeas relief on Ground Four.

**F.  Ground Five is without merit.**

> In Ground Five, Petitioner asserts that the trial court denied her due process when it failed to conduct an evidentiary hearing regarding the claims submitted in her petition for post-conviction relief under O.R.C. § 2953.21 et seq.  Doc. 1, pp. 29-31, Doc. 9, pp. 34-36. Respondent asserts that Petitioner's claim does not challenge the constitutionality of Henry's conviction on the charges for which she is now incarcerated.  Doc. 4, pp. 49-50.  Accordingly, Respondent argues, and the undersigned agrees, that Henry's fifth ground for relief is not cognizable in this federal habeas corpus proceeding.  Doc. 4, p. 49.

> The Sixth Circuit has held that claims challenging state post-conviction proceedings cannot be brought under the federal habeas corpus statute, 28 U.S.C. § 2254.  *Kirby v. Dutton*, 794 F.2d 245 (6th Cir. 1986).  "[T]he essence of habeas corpus is an attack by a person in custody

---

[20] In addition to the expert opinion testimony, other evidence was presented to the jury including: Mr. Henry received a telephone call from his wife on the morning of fire wherein Petitioner indicated to her husband that he needed to get home quick and the call caused him to sense something was wrong (Exhibit 49, Tr. 938-941); Mr. Henry hurried home and on his way home he kept trying to call Petitioner and he called his daughter and informed her that something was not right with Petitioner (Exhibit 49, Tr. 941-942); when Mr. Henry arrived home, he pulled Petitioner out of the bathroom and retrieved his minor grandchildren from the house but was unable to access Michael's room (Exhibit 49, Tr. 942-947); when responding to the fire, a Lieutenant with the Perry Joint Fire District found Petitioner to have lacerations on top of her wrists (Exhibit 48, Tr. 393, 399-400) and she told him "she wanted her and her son to be with her [deceased] mother" (Exhibit 48, Tr. 400); there was an ignitable odor detected in the room where Michael's body was found (Exhibit 48, Tr. 631); there was a gas can located in Michael's room where the fire started (Exhibit 48, Tr. 627); there was a comforter and portions of a blanket collected from the area where Michael's body was found (Exhibit 48, Tr. 627-628); there were newspapers stacked along side of Michael's body (Exhibit 48, Tr. 628); a suicide note by Henry was found in the home (Exhibit 46, Tr. 213-214, Exhibit 48, Tr. 521, Exhibit 50, Tr. 1091-1092); the night before the fire and a day or two before the fire, Petitioner's son-in-law, Joe Schuldheis, called Petitioner's daughter continually because of issues with their relationship and he told Crystal, his wife, that he intended to call Human Services about the treatment of Michael in his home (Exhibit 48, Tr. 461-463, 503, Exhibit 49, Tr. 876, 936-937); Petitioner's only recollection from the morning of the fire was going into her son Michael's room and finding him cold and his heart not beating and then her next memory was being in the hospital (Exhibit 50, Tr. 1089-1090).  *See Durr*, 487 F.3d at 449 (in considering a sufficiency claim, "circumstantial evidence is entitled to equal weight as direct evidence.").

44

upon the legality of that custody, and . . . the traditional function of the writ is to secure release

from illegal custody." *Kirby*, 794 F.2d at 246 (quoting *Preiser v. Rodriquez*, 411 U.S. 475, 484

(1973)).   Notwithstanding Petitioner's attempts to argue otherwise, in Ground Five she is

challenging the trial court's denial of her request for a post-trial evidentiary hearing.  Since that

challenge is not an attack on the underlying conviction but rather an attack on the procedure

during the collateral proceedings, Petitioner's claim is not cognizable in this case.  *Kirby*, 794

F.2d 245.

　　　　Additionally, Petitioner's reliance upon *Young v. Ragen*, 337 U.S. 235 (1949) to support

Ground Five is misplaced.  *Young* dealt with ensuring "that prisoners be given some clearly

defined method by which they may raise claims of denial of federal rights."  *Young*, 337 U.S. at

239.   Ohio does provide Ohio prisoners with a process by which they can assert claims that their

federal constitutional rights have been violated.  *See* O.R.C. § 2953.21 et seq.; *see also Schulte v.*

*Koneth*, 1998 WL 553630, *2 (11th Dist. July 10, 1998).  As part of that process, a hearing under

O.R.C. § 2953.21 is not automatically required.  *See State v. Jackson*, 64 Ohio St.2d 107, 110

(1980).  Petitioner was not denied the right to seek post-conviction relief in the state court;

rather, the trial court considered her petition for post-conviction relief without conducting an

evidentiary hearing.[21]  Accordingly, Petitioner's reliance upon *Young* is misplaced and does not

persuade the undersigned that Ground Five is cognizable on federal habeas review.

　　　　For the foregoing reasons, the undersigned recommends that Henry be denied federal

habeas relief on Ground Five.

---

[21] The Ohio Court of Appeals considered the trial court's denial of an evidentiary hearing and concluded that the
trial court did not err.  Exhibit 37, ¶57.

## V. Conclusion and Recommendation

For the reasons stated above, all of Henry's grounds for relief have been defaulted, are not cognizable and/or are without merit. Accordingly, the undersigned recommends that Henry's petition for writ of habeas corpus (Doc. 1) be **DENIED**.

Dated: March 13, 2013

Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).