# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| LISA HENRY, | ) | CASE NO. 1:11CV301 |
| | ) | |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| GININE TRIM, | ) | |
| | ) | |
| | ) | |
| RESPONDENT. | ) | |

Before the Court are petitioner's objections (Doc. No. 13) to the Report and Recommendation ("R&R") (Doc. No. 10) of the magistrate judge, recommending denial of the petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Respondent filed neither objections nor any opposition to petitioner's objections. The matter is ripe for determination.

## I. STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party.").

"An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747

(E.D. Mich. 2004). *See also* Fed. R. Civ. P. 72(b)(3) ("[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to"); LR 72.3(b) (any objecting party shall file "written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections").

After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In conducting its de novo review in a habeas context, this Court must be mindful of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim−
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question

of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

In addition, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant [for a writ of habeas corpus] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## II. DISCUSSION

### A.     The R&R

This case arises out of the conviction of petitioner for the death of her adult child, Michael Henry ("Michael"), who suffered from cerebral palsy. At trial, petitioner claimed that, on the morning of September 13, 2006, after everyone else in the household had left for work and school (except for three grandchildren petitioner was baby-sitting),[1] she found her son dead in his bedroom. She claimed to remember nothing else about that day (other than waking up in the hospital), including setting the house on fire, attempting suicide, writing a suicide note, and calling her husband at work to warn him to come home immediately. Following a jury trial, petitioner was found guilty of aggravated arson, aggravated murder, murder, and endangering children. She was sentenced to a total term of twenty-three years to life in prison, plus five years of post-release control.

---

[1] Eleven people lived in the household: petitioner and her husband, John Henry; their three adult children, John Jr., Crystal, and Michael (who died in the fire); John Jr.'s wife, Jennifer, and their four minor children; and Crystal's minor child.

The magistrate judge presented an R&R that thoroughly discusses the procedural background of the case, which this Court need not repeat and herein adopts. (*See* Doc. No. 10 at 2732-38.)

Relying upon 28 U.S.C. § 2254(e)(1), the R&R presumes that the factual findings were correct as stated by the Eleventh District Court of Appeals of Ohio, notwithstanding petitioner's argument that the factual recitation omitted key pieces of evidence supported by the record. With respect to the six individual grounds for relief, the R&R first finds procedurally barred one of five instances of alleged prosecutorial misconduct set forth in ground two and the entirety of ground six. Then, in a thoroughly-reasoned analysis, the R&R rejects all of petitioner's other grounds on their merits.

**B.      Petitioner's Objections**

Except for the conclusion that one portion of ground two is procedurally barred (which petitioner concedes), petitioner objects to the remainder of the R&R's conclusions, including the conclusion that the state court's fact findings must be presumed to be correct.

### 1.      Challenge to the Presumption of Correctness of State Court Fact-Findings

Although petitioner challenges the state court fact-findings, she does so not because they are "unreasonable . . . in light of the evidence presented" (28 U.S.C. § 2254(d)(2)), but because, in her view, "the state appellate court's factual determinations were *incomplete*." (Objections [Doc. No. 13] at 2782, emphasis added.) She makes this assertion based on citations to broad page ranges in the trial transcript. (*See*, Traverse [Doc. No. 9] at 2680 and Objections at 2781, citing generally the trial testimony of Dr. Bligh-Glover and Dr. Heather Nielson Raaf.) At best, petitioner is arguing that there was competing evidence not *included* in the state court's

recitation of the facts. She does not argue that the state court failed to consider the additional facts, nor does she state how failing to recite (or consider) the additional facts might be significant in a *habeas* context, where constitutional violations are the issue. 28 U.S.C. § 2254(a). Competing evidence exists in virtually every case, both criminal and civil. In fact, it is precisely *because* there is likely to be competing evidence that AEDPA requires habeas courts to defer to the state courts as fact-finders. *See, e.g., Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (per curiam) ("it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial[]" and a federal court may overturn a state court decision "only if the state court decision was 'objectively unreasonable.'") (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)); *Franklin v. Bradshaw*, 695 F.3d 439, 448-49 (6th Cir. 2012) ("so long as fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under AEDPA) (citing *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)).[2] "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)[.]" *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Petitioner has failed to meet her burden of rebutting the presumption of correctness afforded the state court's factual findings, nor has she shown that the state court's recitation of the facts was objectively unreasonable. This objection is overruled.

---

[2] Although petitioner makes no argument relating to the sufficiency or manifest weight of the evidence, even if she had, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Cavazos*, 132 S. Ct. at 4 (citation omitted).

2.      **Challenges on the Merits**

Notwithstanding its length, the remainder of petitioner's filing does not raise actual "objections" requiring de novo review. As explained in *Aldrich*, *supra*:

> A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An "objection" that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an "objection" as that term is used in this context. A party who files timely objections to a magistrate's report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court "with the opportunity to consider the specific contentions of the parties and to correct any errors immediately." *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir.1981). The Supreme Court upheld this rule in *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), a habeas corpus case. The Supreme Court noted that "[t]he filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal— that are at the heart of the parties' dispute." *Id.* at 147, 106 S.Ct. 466 (footnote omitted).
>
> *  *  *
>
> A general objection to the magistrate's report has the same effect as a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. The duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. *Howard v. Secretary of Health and Human Servs.,* 932 F.2d 505, 509 (6th Cir.1991).

327 F. Supp. 2d at 747-48.

The Court has compared the objections to the petition and the traverse and finds that almost every argument made in the objections is virtually identical to the arguments previously made. Petitioner does not point out any *error* in the R&R's analysis; she merely *disagrees* with its conclusions and restates her original arguments, interspersed with a paragraph or two summarizing the R&R's conclusion on each issue.

The Court has also examined and considered the thoughtful analysis in the R&R and finds no error of law or fact.

      a.     <u>Ground One</u>: **Ms. Henry's trial counsel rendered ineffective assistance of counsel, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.**

The R&R identifies nine alleged instances of ineffective assistance of trial counsel[3] and concludes that the Ohio Court of Appeals did not unreasonably apply *Strickland v. Washington*, 466 U.S. 668, 687 (1984) with respect to any of the nine instances.[4]

---

[3] The nine instances are:

(1) Trial counsel failed to adequately combat the State experts' opinions regarding the cause of death, or challenge the testimony based on applicable rules of evidence relating to foundation.

(2) Trial counsel did not object to allegedly improper remarks suggesting that the decedent may have had a blanket covering his face during the time of the fire, thus suggesting that soot and carbon monoxide could have been prevented from entering the deceased's body.

(3) Trial counsel did not object during closing argument when the prosecutor incorrectly told the jury that one of petitioner's expert witnesses (Dr. Yowler) did not give an opinion regarding whether her son had died in the fire, and that the witness's testimony had no bearing on the case.

(4) Trial counsel did not object to, or request the redaction of, a blanket admitted into evidence labeled as "BLANKET VICTIM COVERED WITH."

(5) Trial counsel did not object to the admission of a CD containing numerous photographs entitled "Parmly Road homicide."

(6) Trial counsel did not renew his objection to the trial court's determination that Dr. Alan Gurd, the alleged victim's treating physician, could not testify regarding the shortened life expectancy of individuals who suffered from severe cerebral palsy in a case in which such testimony was critical to the jury's determination of the issues.

(7) Trial counsel did not tell the jury during defense closing argument that, when he confronted the opinions of the State's experts, they were forced to admit their opinions were not supported by any literature and their conclusions were not realistic.

(8) Trial counsel did not tell the jury during defense closing argument that Dr. Resnick was compelled to admit that his theory was not realistic.

(9) Trial counsel had already questioned Dr. Resnick, Ms. Henry's renowned expert witness, about what trial counsel referred to as the "murder."

(R&R at 2747-48.)

[4] "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. To meet this standard, petitioner "must show that counsel's representation fell below an objective standard of reasonableness[]" *and* that the "deficiencies in counsel's performance [were] prejudicial to the defense[.]" *Id*. at 688, 694.

By way of objection, petitioner merely reasserts the same arguments raised in her petition and traverse. As to the first three instances of alleged ineffectiveness, relating generally to trial counsel's failure to adequately challenge various aspects of the State's case relating to the cause of death of Michael Henry (the victim), petitioner merely broadly cites to the entirety of the testimony of Dr. Bligh-Glover and advises the Court that, in particular, his "cross-examination testimony should be reviewed." (Objections at 2785.) Petitioner supplies even less by way of objection to the other six instances, stating merely that the arguments "were presented in Ms. Henry's traverse." (*Id*. at 2786.) She makes conclusory statements that trial counsel's performance was "deficient" and that it "prejudiced the outcome" of her case; but she fails to point to any error in the R&R's conclusions.

In the habeas context, where, as here, the claims of ineffectiveness were first adjudicated before a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011).

> This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams* [*v. Taylor*, 529 U.S. 362, 410 (2000)]. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Id*. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The unreasonableness question is, therefore, not "a test of [this Court's] confidence in the result it would reach under *de novo* review [of the *Strickland* claims.]" *Id*. "[E]ven a strong case for relief does not mean the state

8

court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) ("The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable.") (citations omitted)).

Here, even were this Court to construe petitioner's filing as true objections requiring de novo review, all of her arguments address whether counsel was ineffective under *Strickland*, not whether the state court unreasonably applied *Strickland* when it determined petitioner's ineffectiveness claims in the first instance. Petitioner essentially argues only that the state court's application of *Strickland* was incorrect and, therefore, unreasonable. That, however, is not the proper analysis, as made clear by *Harrington*, *supra*.

The Court finds no error in the R&R's treatment of ground one and, therefore, overrules petitioner's objections.

**b.**     **Ground Two: The prosecutor's misconduct at Ms. Henry's trial denied Ms. Henry a fair trial and the due process of law, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.**

The R&R identifies five instances of alleged prosecutorial misconduct under ground two, and notes the parties' agreement that one of those instances is procedurally barred because it was not presented to the state court. With respect to the remaining four,[5] the R&R

---

[5] These were identified as:

(1) The prosecutor's suggestion, buttressing the theory that the decedent was alive in the fire for a period of time, that the decedent had a blanket over his face, suggesting that the blanket could have prevented residual soot and carbon monoxide from being present in the decedent's body;

(2) The prosecutor's suggestion during closing argument that the foam cone around the decedent's mouth supported the theory that the decedent had been alive at the time of the fire;

(3) The prosecutor's remarks during closing disparaging as "propaganda" the defense's scientific evidence; and

(4) The prosecutor's suggestion during closing that petitioner was a liar: "So the evidence becomes what's the only evidence whether he was dead or alive or not and the defense suggests

notes that, despite petitioner's arguments here as to why the prosecutor's conduct was improper, it is not the role of a habeas court to engage in de novo review of the evidence; rather, as with the ineffective assistance of counsel claim, this Court must only determine whether the Ohio court of appeals unreasonably applied the federal standard applicable to claims of prosecutorial misconduct when that court examined those issues in the first instance. Ultimately, the R&R concludes that petitioner is unable to establish that the state court's determination that there was no prosecutorial misconduct was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." (R&R at 2760, citing cases.) The R&R further concludes that, even if the prosecutor's remarks were to be deemed improper, they did not so permeate the case as to infect the outcome and result in a denial of due process.

As with ground one, petitioner's objections regarding ground two are merely repetitions of her original arguments, but for a couple of strategically placed paragraphs summarizing the R&R's conclusions. Petitioner points out no *error* in the R&R, she merely *disagrees* with it, and the Court has found no error upon its own review of the R&R's discussion of ground two.

Accordingly, to the extent petitioner raises any true objection with respect to ground two, the same is overruled.

---

the only credible evidence is the defendant's statements. I have yet to see a person charged with murder come in and tell the jury yeah, I did it, right. Yeah, I did it, okay, swear to tell the truth."
(R&R at 2756-57.)

     **c.**    <u>**Ground Three**</u>**: The trial court violated Ms. Henry's rights to a fair trial and due process of law when it allowed into evidence unreliable, prejudicial scientific expert witness testimony, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.**

     In this ground, petitioner challenges the trial court's admission of the testimony of the State's experts, in particular, Dr. Bligh-Glover and Dr. Raaf.

     The R&R first notes that, generally, a challenge to a state court's rulings regarding admissibility of evidence is not a cognizable federal habeas claim. (R&R at 2763, citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).) Petitioner concedes this point of law. However, the R&R further notes that, where an evidentiary ruling is so prejudicial as to deprive the defendant of due process and a fair trial, habeas relief is warranted. The R&R concludes:

> Petitioner offers a conclusory statement that "if the erroneously admitted testimony had not been admitted, Ms. Henry would not have been convicted of aggravated murder and murder." . . . Petitioner's argument ignores the fact that the State's experts' testimony was not the only evidence that the jury heard. In addition to hearing the State's experts, the jury heard from the defense experts regarding the defense's theory of the case, i.e., that Michael had died before the fire . . . as well as from the defense's psychiatric expert . . . . Much additional evidence was presented to the jury, including evidence regarding the events leading up to and following the fire as well as evidence retrieved from the scene of the fire. . . . Thus, even if the Court were to conclude that the trial court incorrectly allowed the State's experts to testify, the Petitioner has not demonstrated that admission of that evidence was so prejudicial that it deprived her of due process and a fair trial to warrant federal habeas relief.

(R&R at 2764, internal citations omitted.)

     Again, petitioner's "objections" are largely restatements of the arguments in her petition and traverse and, to that extent, are not entitled to de novo review. However, even petitioner's assertion in her objection to the R&R's determination of ground three that "[t]he trial court failed to act as a gatekeeper against unsound, critical evidence, in violation of Ms. Henry's

11

constitutional rights[]" (Objections at 2791), which itself is not an entirely new argument, fails to establish a claim entitling her to habeas relief.

In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the Supreme Court held that the rules of evidence regarding admissibility of expert testimony, require that "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id*. at 589. Fed. R. Evid. 702 (and its Ohio counterpart) "clearly contemplates some degree of regulation of the subjects and theories about which an expert may testify." *Id*. However, the Court in *Daubert* also noted that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id*. at 596.

In the instant case, petitioner never challenged at trial the admissibility of the evidence she now argues was so prejudicial. Rather, she let the adversarial process, i.e., *due process*, work as it was meant to work: at trial, she "[v]igorously cross-examin[ed] [and] present[ed] contrary evidence" to the State's experts. *Id*. In fact, her arguments before this Court specifically point to that vigorous questioning by trial counsel. Apparently the jury, after weighing the competing evidence, had reason to credit the State's evidence instead of petitioner's. It is not the province of a federal habeas court to second-guess the jury.

The Court finds no error in the conclusion of the R&R with respect to ground three and, therefore, to the extent there are viable objections, those objections are overruled.

      **d.**    <u>**Ground Four**</u>**: The trial court violated Ms. Henry's rights to due process and a fair trial when, in the absence of sufficient evidence, the trial court convicted Ms. Henry of aggravated murder and murder, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.**

The R&R properly noted that, on federal habeas review, a state court's determination regarding sufficiency of evidence is entitled to a "double layer" of deference. (R&R at 2765, citing *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).) First, a habeas court "must view the evidence in the light most favorable to the prosecution, and determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Mathis v. Colson*, 528 F. App'x 470, 476 (6th Cir. 2013) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Second "'even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable.'" *Id.* (quoting *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)).

By way of objection, petitioner once again challenges the reliability of the testimony of the state's experts, asserting that, because she viewed the testimony as unreliable and unscientific, no rational trier of fact could have relied upon it. She declares that the autopsy and toxicology tests indicated that Michael was unlikely to have been alive during the fire. However, there was competing evidence in this regard. The evidence viewed in the light most favorable to the prosecution requires a conclusion that, as the state's experts testified, Michael was alive for at least a short time during the fire.

Petitioner also objects to the R&R's conclusion "that the court  of appeals clearly applied the correct standard of review." (Objections at 2798.) Her argument, however, does not address standard of review but, rather, standard of proof. She asserts that, although the state court

13

*stated* that it was applying the "beyond a reasonable doubt" standard of proof, in fact, it actually held that "the state presented sufficient evidence to support a homicide conviction, showing that it was *possible* for Michael to have been alive when the fire started." (Objections at 2799, quoting *State v. Henry*, No. 2007-L-142, 2009-Ohio-1138, at ¶ 165 (Ohio Ct. App. Mar. 13, 2009) (emphasis added).) Petitioner thus concludes that the state court improperly applied a preponderance of the evidence standard.

This Court concedes that the state court's phrasing quoted immediately above was somewhat unfortunate. However, when that statement is read in light of the entire reasoning of the state court, it is more likely that the state court meant to conclude that a jury could believe, based on the state's evidence, that Michael was alive during the fire. In other words, given the evidence, and resolving all disputes in favor of the prosecution, the state court determined that it was possible for a *rational* trier of fact to conclude that Michael was alive when the fire was set by petitioner and, by extension, that the element of causation was established. On habeas review, this Court must defer to that determination so long as it was not unreasonable. 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "The question 'is not whether a federal court believes the state court's determination . . . was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

This Court concludes that the state court's determination was not unreasonable. Therefore, petitioner's objections with respect to ground four are overruled.

    e.    **<u>Ground Five</u>: The trial court denied Ms. Henry's right to due process of law when it failed to conduct an evidentiary hearing regarding the claims and supporting evidence presented within Ms. Henry's petition for post-conviction relief under Ohio Revised Code Section 2953.21 et seq., in violation of Ms. Henry's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.**

The R&R concludes, relying on *Kirby v. Dutton*, 794 F.2d 245 (6th Cir. 1986), that challenges to state post-conviction proceedings are not cognizable in federal habeas.

Petitioner objects, arguing that, despite having submitted post-conviction evidence "consist[ing] of affidavits from reputable expert witnesses and treatises in support of her arguments that she was denied the effective assistance of trial counsel[,]" (Objections at 2800), and "despite [her] substantial showing that she was denied her constitutional rights at trial, the trial court denied her [post-conviction] claims without holding a hearing regarding those claims, and the reviewing state courts unreasonably failed to correct the trial court's error." (*Id.*). She argues that Ohio Rev. Code § 2953.21(E) mandated a hearing and, having been denied one, she was denied due process.

The Court finds no error in the R&R's conclusion that the Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas review.

Petitioner's objection with respect to ground five is overruled.

15

      f.      **<u>Ground Six</u>: Ms. Henry's trial counsel rendered ineffective assistance of counsel when he failed to submit at Ms. Henry's trial substantial testimony and evidence supporting Ms. Henry's innocence of aggravated murder and murder, as demonstrated within Ms. Henry's petition for post-conviction relief and supplement to her petition for post-conviction relief, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.**

The R&R concludes that this ground was procedurally defaulted and petitioner objects.

The objection to this ground hardly warrants discussion. This ground is essentially a challenge to a post-conviction proceeding wherein petitioner apparently attempted to raise a new claim of ineffective assistance of trial counsel that she had failed to raise on direct appeal, despite having been represented on direct appeal by new counsel.

The Court perceives no error in the R&R's conclusion that this claim of ineffectiveness, having not been raised on direct appeal despite no barriers to doing so, is procedurally barred.

Petitioner's objection as to ground six is overruled.

## III. CONCLUSION

In light of the narrow scope of review afforded a habeas petitioner under AEDPA, this Court concludes that there is no basis upon which to grant a writ of habeas corpus. Accordingly, the R&R is accepted, the petition is **DENIED,** and the case is dismissed. Further,

the Court certifies that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: February 21, 2014

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**